## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANGELA PATERNOSTRO, ET AL. | * | CIVIL ACTION NO. 13-0662 C/W |
| | * | 13-4953, 13-4954 & 13-6602 |
| VERSUS | * | |
| | * | JUDGE:  ELDON E. FALLON |
| CHOICE HOTEL INTERNATIONAL | * | |
| SERVICES CORP., D/B/A CLARION | * | MAGISTRATE : MICHAEL B. NORTH |
| INN AND SUITES, ET AL. | * | |
| | * | THIS DOCUMENT RELATES TO: |
| | * | ALL CASES |

*****************************************************************************

### MEMORANDUM IN SUPPORT OF MOTION
### TO DISMISS ALL CLAIMS AGAINST ACE PROPERTY AND CASUALTY

May it Please the Court:

This Memorandum is submitted on behalf of Defendant ACE Property and Casualty Insurance Company ("ACE"), through undersigned counsel, in support of ACE's pending Motion to Dismiss all claims by all plaintiffs in these consolidated cases, pursuant to Fed. R. Civ. P. 12(b) (6) or alternatively, Fed. R Civ. P. 56.

### BACKGROUND

**I.     Procedural History and Relevant Factual Allegations**

On March 19, 2013, plaintiffs Angela Paternostro, Robyn Ortego, and Mercedes Paternostro filed a suit individually and as surviving heirs of Russell Paternostro ("Paternostro Plaintiffs") alleging that the decedent was exposed to *Legionella* bacteria on December 5, 2012 at the Clarion Inn and Suites at 501 N. Highway 190 in Covington (the "Hotel"). (Doc. 1-2, Paternostro Petition, ¶¶11-12).   The Paternostro Plaintiffs further allege that Russell Paternostro subsequently died from that exposure. Paternostro Pet. at ¶¶11, 26, 34. The Paternostro Petition was removed to this Court on April 9, 2013. (Doc. 1, Notice of Removal).

On July 1, 2013, plaintiff Marie Hesser ("Hesser") filed a complaint in this Court, alleging that she was exposed to *Legionella* bacteria on December 16-17, 2012 when she was an overnight guest at the Hotel. *See*, Doc. 1, Hesser Complaint, Case #13-4953, at ¶¶8, 13, 24, and 30.

On July 1, 2013, plaintiffs Gwen Newberry and Robert Newberry ("Newberrys") filed a complaint in this Court, alleging that Gwen Newberry was exposed to *Legionella* bacteria on December 14, 2013, while eating lunch at the Hotel. *See*, Doc. 1, Newberry Complaint, Case #13-4954, at ¶¶8, 13, 20, and 30.  The Hesser and Newberry Complaints were transferred to this division and consolidated with the Paternostro action in July 2013.  See, Docs. 7, 8, 9 and 10.

Lastly, on December 6, 2013, plaintiff Jason Beleto ("Beleto") filed a complaint in this Court individually and on behalf of his minor child Cruz Beleto, alleging that, on January 29, 2012, the minor was exposed to *Legionella*, *Pseudomonas aeruginosa* and/or "other dangerous bacteria," when he used the hot tub at the Hotel. *See*, Beleto Complaint, Doc 1, Case #13-6602, at ¶¶17, 25, and 29).  The Beleto Complaint was transferred to this Division and consolidated with the Paternostro action in January 2014. *See*, Docs. 9 and 10.

This motion is filed on behalf of ACE Property and Casualty Insurance Company ("ACE"), which issued one (1) commercial umbrella liability policy to Choice Hotels International, Inc., the franchisor of the Hotel, for policy period June 1, 2011 to June 1, 2012.

ACE and other insurer defendants were first named in this action on January 22, 2014, in a First Supplemental and Amended Complaint and Class Action (the "First Amended Complaint"). *See*, First Amended Complaint, Doc. 94.   The First Amended Complaint asserts that ACE issued a policy of insurance to Choice and/or Century Wilshire, Inc., the franchisee of the Hotel. during the period June 1, 2011 to June 1, 2012. See, First Amended Complaint. Doc.

94, at ¶¶2 (i), 2(k).

In the First Amended Complaint, each plaintiff reiterated the same basic facts with regard to their alleged exposure to *Legionella* and/or *Pseudomonas aeruginosa* at the Hotel. *See*, First Amended Complaint, Doc. 94 at ¶¶13, 24, 36-45. In addition, the First Amended Complaint asserted for the first time relief on behalf of one or more purported classes of non-employee guests and conventional/event attendees who were "exposed to *Legionella* and/or *Pseudomonas aeruginosa*" between December 1, 2011 and January 28, 2013. See, First Amended Complaint, Doc 94 at ¶46.

Although the individual Complaints filed on behalf of the Paternostro, Hesser, Newberry and Beleto Plaintiffs repeatedly and specifically assert that *Legionella* and *Pseudomonas aeruginosa* are "bacteria," the First Amended Complaint carefully attempts to avoid use of the word "bacteria."

## II.     The ACE Umbrella Policy

ACE issued one (1) commercial umbrella liability policy to Choice Hotels International, Inc. for policy period June 1, 2011 to June 2, 2012 (the "ACE Policy"). *See,* certified copy of Ace Policy attached to ACE's Statement of Uncontested Facts and Allegations as Exhibit 1.

The ACE Policy provides umbrella coverage in accordance with its terms with a limit of liability of $25 million per occurrence and in the aggregate, excess of Choice's primary policy for the same period.[1] *See,* ACE Policy, Exhibit 1 to Statement of Uncontested Facts, Declarations Page. *See also*, First Supplemental and Amended Complaint, Doc. 94, at ¶¶2 (i), 2(k) and 9.

---

[1] Scottsdale Insurance Co. issued the primary policy to Choice for policy period June 1, 2011 to June 1, 2012. For the subsequent policy period, June 1, 2012 to June 1, 2013, an insurer other than ACE issued the first layer umbrella coverage and there was no ACE policy in force and effect. The only policy period in which ACE insured Choice was for policy period June 1, 2011 to June 1, 2012.

The insuring agreement of the ACE Policy provides in relevant part that:

\*       \*       \*

Insuring Agreement

A.  We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

  1.  This insurance applies to "bodily injury" and "property damages" that takes place in the "coverage territory", but only if:

    a.  The "bodily injury" or "property damage" is caused by an "occurrence"; [and]

    b.  The "bodily injury" or "property damage" occurs during the "policy period"; …

\*       \*       \*

*See*, ACE Policy, Exh. 1, Clause I.A.1.

The ACE Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See*, ACE Policy, Exhibit 1, Clause VII.C. The ACE policy defines "occurrence" is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See*, ACE Policy, Exhibit 1, Clause VII, O.

The ACE Policy contains exclusions. Significantly, the ACE Policy contains a broad "Fungi or Bacteria Exclusion." Specifically, the ACE Policy excludes coverage for bodily injury "arising out of or in any way relatedty" to actual or alleged inhalation, ingestion, contact, exposure, existence or presence of "bacteria." Endorsement 12 to the ACE Policy provides that:

## FUNGI OR BACTERIA EXCLUSION

*This insurance does not apply to "bodily injury", "property damage" or ""personal and advertising injury" **arising out of or in any way related to** the actual, alleged or **threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of,** "fungi" or **bacteria**, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to "bodily injury", "property damage" or "personal and advertising injury".*

"Fungi" means any type or form of fungus, mold, mildew, mycotoxins, spores, or scents or by-products produced or released by "fungi", but does not include any "fungi" intended by the "insured" for human consumption.

All other terms and conditions of the policy remain unchanged.

*See*, ACE Policy, Exhibit 1, Endorsement 12 (*emphasis added*) (hereinafter "Bacteria Exclusion")

Both *Legionella* and *Pseudomonas aeruginosa* are "bacteria." These consolidated cases assert bodily injury claims due to alleged exposure to these bacteria. In accordance with the Scheduling Order entered in these consolidated cases, ACE now moves for summary dismissal under Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 56 as to all claims of all plaintiffs in that the ACE Policy clearly, unequivocally and unambiguously excludes coverage for claims which arise out of or in any way relate to "the actual or alleged inhalation, ingestion, contact, exposure, existence or presence of ... bacteria."

## LAW AND ARGUMENT

I.  **Ace is Entitled to Summary Dismissal of All Claims under Rule 12 (b)(6) or Alternatively, Rule 56**

Ace is entitled to dismissal of all claims against it in that complaints herein, as amended and supplemented fail to state a claim against the ACE Policy. Rule 12(b) (6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss can be granted unless the plaintiff pleads "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2. 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.*, 127 S.Ct. at 1965 (internal citations omitted). Generally, in deciding the motion, the Court must not go outside the pleadings and must accept all well-

pleaded facts as true, viewing those facts in the light most favorable to the plaintiff. *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003). Documents that are referred to in the plaintiff's complaint and that are central to the plaintiff's claim are properly considered. Id. (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *In re Chinese Manufactured Drywall Products Liab. Litig.*, 759 F.Supp. 2d 822, 828 (E.D. La. 2010). When evaluating a complaint under a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868. "Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Ultimately, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950.

Alternatively, ACE submits that there are no factual issues in dispute and that pursuant to Fed. R. Civ. P. 56, it is entitled to dismissal as a matter of law of all claims against it by all plaintiffs. Fed. R. Civ. P 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). *See*, accompanying Statement of Uncontested Facts and Plaintiffs' Allegations submitted in support hereof. [2]

Louisiana substantive law governs this diversity action. Under Louisiana law, an insurance policy is a contract between the parties that should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So.2d 759, 763; *see also Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007); *Cadwallader v. Allstate Ins. Co.*,

---

[2]   ACE believes that this Court may and should decide ACE's Motion to Dismiss pursuant to Red. R. Civ. P. 12; however, in an abundance of caution, ACE alternatively seeks summary dismissal pursuant to Fed. R. Civ. P. 56.

848 So.2d 577, 580 (La. 2003). Words in the policy are to be ready using their ordinary, plain and popular meaning. *Id.*

"Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." Louisiana Ins. Guar. Ass'n, 630 So.2d at 763 (citing *Oceanonics, Inc. v. Petroleum Distributing Co.,* 292 So.2d 190, 192 (La. 1974)). Where the wording of the policy is clear and unambiguous, the Court must enforce the insurance contract as written. *Id.* at 764; *Sims,* 956 So.2d at 589.

Pretermitting all other coverage and liability issues that may exist, for purposes of this motion, ACE is entitled to summary dismissal of claims against it for two reasons:

1)   The ACE Policy contains a broad Bacteria Exclusion which clearly and unambiguously excludes coverage for all claims against ACE.

2)   Alternatively, ACE is entitled to dismissal of all claims of the Paternostro, Hesser and Newbery Plaintiffs because none of these plaintiffs assert alleged exposure to *Legionella* during the pendency of the ACE Policy.

## II.   The Bacteria Exclusion In The Ace Policy Unambiguously Excludes Coverage For Each Of The Plaintiff's Claims

The First Supplemental and Amended Complaint and Class Action allege that all of the plaintiffs and the proposed class(es) were guests or non-employee visitors at the Hotel. *See,* Am. Complaint (Doc. 94, ¶¶13, 24). The Amended Complaint further alleges that all plaintiffs were injured from exposure to *Legionella* and/or *Pseudomonas aeruginosa* at the Hotel. See, Am. Complaint (Doc. 94, at ¶¶36-45). The proposed class definition specifically asserts that the purported class members were exposed to "Legionella and/or Pseudomonas aeruginosa" at the Hotel. *See,* Am. Complaint, Doc. 94, at ¶46. A review of the factual allegations made by

plaintiffs make clear that all of their injury claim "arise out of or relate in any manner" to the "actual or alleged "inhalation of, ingestion of, contact with, exposure to, existence of, or presence of" bacteria and therefore they fall squarely within the Bacteria Exclusion to the ACE Policy.

### A.    *Legionella And Pseudomonas Are Types Of "Bacteria"*

ACE assumes that all plaintiffs will and must concede that both *Legionella* and *Pseudomonas* are types of bacteria.   Each of the four original complaints repeatedly and specifically asserts on behalf of each respective plaintiff that both *Legionella* and *Pseudomonas* are "bacteria."   The phrase "legionella bacteria" is recited at least 20 times in the original Paternostro Petition, the Hesser Complaint, and the Newberry Complaint.   For example, the Paternostro plaintiffs allege in their original petition that *Legionella* is a "known hazardous substance and condition and toxic bacteria." *See*, Paternostro Pet., Doc. 1, ¶ 16.  The Hesser and Newberry plaintiffs recite the same allegation of "toxic bacteria" in their complaints.  Similarly, the Beleto plaintiff refers to "*Legionella* and/or *Pseudomonas aeruginosa* bacteria" in five paragraphs of his original complaint.  See, Paternostro Pet., Doc. 1 at ¶¶11-18, 20, 22, 23, 26-28, 30, 32, 34; Hesser and Newberry Complaints, Doc. 1, Case #13-4953 & 13-4954, at ¶¶10, 12-22, 25, 26, 28, 30; and Beleto also refers to "*Pseudomonas aerigunosa* bacteria" and "*Legionella, Pseudomonas aeruginosa*, or other dangerous bacteria" in his complaint.  *See*, Beleto Complt., Doc. 1, Case #13-6602, at ¶¶17 and 22.

Accordingly, a review of the pleadings of each plaintiff reveals that each has affirmatively admitted that their alleged injury was caused by exposure to "bacteria."  The Court is entitled to review all petitions and complaints that form the combined record in these consolidated cases and take judicial notice of them. *In re Chinese Manufactured Drywall Products Liab. Litig.*, 759 F.Supp. 2d 822, 828 (E.D. La. 2010) (taking judicial notice of

allegations in Omnibus Complaints for all plaintiffs); *see also, Tipton v. Northrop Grumman Corp.*, 2009 U.S. Dist. LEXIS 89887, *14-15 (E.D. La. Sept. 29, 2009) (taking judicial notice of complaint filed by the same plaintiffs in prior case).  No plaintiff in these consolidated cases can now disavow admitting that both *Legionella* and *Pseudomonas* are "bacteria."

**B.     Alternatively, the Court Must Take Judicial Notice That *Legionella* And *Pseudomonas Aeruginosa* Are Types of "Bacteria"**

Alternatively, ACE suggests that this Court must take judicial notice of any fact that is not subject to reasonable dispute "where it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).  Matters which may be judicially noticed are properly considered in deciding a Rule 12(b) (6) motion.  *See, In Re Chinese Drywall*, 759 F.Supp. 2d at 828 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed. 2d 179 (2007).  The Court has the discretion to take judicial notice in the appropriate circumstance.  Moreover, a trial court is required to take judicial notice of facts if a party requests it to do so and the party supplies appropriate and reliable supportive information on which the Court must rely. FED. R. EVID. 201(c).

To the extent necessary in considering its motion, ACE respectfully requests that the Court take judicial notice of the scientific fact that both *Legionella* and *Pseudomonas aeruginosa* are types of bacteria.  ACE directs the Court's attention to information published by the U.S. Centers of Disease Control (CDC); the World Health Organization (WHO); and the National Institutes of Health (NIH) on their official websites, which each clearly identify and refer to *Legionella* and *Pseudomonas* as known "bacteria." *See*, for example:

- CDC Website

  http://www.cdc.gov/legionella/index.html

http://www.cdc.gov/hai/organisms/pseudomonas.html

- WHO Website

http://www.who.int/ith/diseases/legionellosis/en/

http://www.who.int/drugresistance/AMR_Importance/en/;

- NIH Website

http://www.nih.gov/news/health/jun2011/nichd-16.htm).

A copy of the relevant pages from the above referenced official governmental websites are attached the ACE's Statement of Uncontested Facts and Plaintifffs' Allegations for the convenience of the Court as Exhibit 2 *in globo*.

Other publicly available non-governmental institutions on their official websites refer to *Legionella* as a bacterium. *See for example*, Mayo Clinic: http://www.mayoclinic.org/diseases-conditions/legionnairesdisease/basics/definition/CON-20028867 and http://legionella.org. *Pseudomonas* is consistently referred to in medical treatises and websites as a form of bacteria. See, for example:

- Textbook of Bacteriology

http://www.textbookofbacteriology.net/pseudomonas.html

- Healthline

http://www.healthline.com/health/pseudomonas-infections#Overview1.

Additionally, ACE refers the Court to the following learned treatises and publications which establish that *Legionella* is a type of bacteria:

- "*Legionella* and the prevention of legionellosis, " edited by Jamie Bartram, et al., World Health Organization, 2007, Available at http://www.who.int/water_sanitation_health/emerging/legionella.pdf.

  *See also*, pages v and 18 attached as part of Exhibit 2 *in globo* to ACE's Statement of Uncontested Facts and Plaintiffs; Allegations.

- "*Legionella* and Legionnaires' Disease: 25 Years of Investigation", by Barry S. Fields, Robert F. Benson and Richard E. Besser, in Clin. Microbiol.        Rev., July 2002; 15(3): 506–526
  Abstract available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC118082/

- "Legionella", by Washington C. Winn, Jr., Chapter 40 contained in *Medical Microbiology, Fourth Edition*, edited by S. Baron, University of Texas Medical Branch at Galveston, 1996, Galveston, Texas
  Abstract available at http://www.ncbi.nlm.nih.gov/books/NBK7619/

- "Legionnaire's Disease: History and Clinical Findings", by Paul H. Edelstein, p.1, published in *Legionella: Molecular Microbiology*, edited by Klaus Heuner and Michele Swanson, 2008, Caister Academic Press, Norfolk, USA,
  Available for viewing online at http://books.google.com/books?id=6v2-2h5SYawC&pg=PA1&lpg=PP1&focus=viewport&dq=Legionella&output=html_text

Similarly, the following learned treatises and publications establish that *Pseudomonas* is

a type of bacteria:

- "*Pseudomonas*" By Barbara H. Iglewski, Chapter 27 in *Medical    Microbiology, Fourth Edition*, Edited By S. Baron, University Of Texas Medical Branch At Galveston, 1996, Galveston, Texas

  Abstract Available at http://www.Ncbi.Nlm.Nih.Gov/Books/Nbk8326/

- "Bacteria of potential health concern" by N.F. Lightfoot, in *Heterotrophic Plate Counts and Drinking-water safety*, edited by J. Batram, et al., 2003
  WHO, published by IWA Publishing, London, UK
  Available at http://www.who.int/water_sanitation_health/dwq/HPC5.pdf,

- "Comparison of Culture and Molecular Identification of Bacteria in Chronic Wounds," by Daniel D. Rhoads, Randall D. Wolcott, Yan Sun, and Scot E. Dowd, in Int. J. Mol. Sci., 2012; 13(3): 2535–2550
  Abstract available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3317672/,

- Pseudomonas Genome Database: Improved Comparative Analysis and Population Genomics Capability for Pseudomonas Genomes," Winsor G.L., Lam D.K., Fleming L., Lo R., Whiteside M.D., Yu N.Y., Hancock R.E., Brinkman F.S in Nucleic Acids Res., Jan. 2011; 39 (Database issue) Pubmed
  Available online at http://www.pseudomonas.com/p_aerug.jsp.

Established scientific facts are properly the subject of judicial notice. *Daubert v. Merrill Dow,* 509 U.S. 579, 593 n.11, 113 S.Ct. 2786, 2796 n.11, 125 L.Ed.2d 469 (1993).  Whether the

organisms which the plaintiffs in this case assert harmed them are a form of "bacteria" is precisely the type of well known, scientific fact appropriate for judicial notice, because it is not subject to any reasonable dispute and can be readily verified. *Hargis v. Atlantic Co. Justice Facility*, 2014 U.S. Dist. LEXIS 58941, *3 n.1 (D.N.J. Apr. 28, 2014)(taking notice that *staphylococcos aureus* is type of bacteria); *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 279 n.1 (D.N.J. 2013)(same); *Henderson v. Huibregtse*, 2005 U.S. Dist. LEXIS 7761, *14-15 (W.D. Wis. Apr. 25, 2005)(taking notice that amoxicillin is FDA-approved and used to treat certain bacterial infections); *see also Sparks v. Ribicoff*, 197 F.Supp. 174, 176 (W.D. Va. 1961) (judicial notice taken of generally known medical and scientific facts relating to human health, such as diseases and the causes of diseases).   Sources of the information appropriate to support judicial notice include the Centers for Disease Control, the Mayo Clinic, and similar medical or scientific resources. *Hargis*, 2014 U.S. Dist. LEXIS 58941, *3 n.1 (medical dictionary); *Grohs*, 984 F. Supp. 2d at 279 n.1 (Mayo Clinic website); *Henderson*, 2005 U.S. Dist. LEXIS 7761, *14-15 (FDA website and Physicians' Desk Reference); *Rahman v. Taylor*, 2011 U.S. Dist. LEXIS 106656, *19 (D.N.J. Sept. 20, 2011) (CDC website).

There is no reasonable dispute in this case that both *Legionella* and *Pseudomonas* are "bacteria." Hence, analysis of the coverage available for the bodily injury claims made herein as a result of alleged exposure to these bacteria requires consideration of the Bacteria Exclusion in the ACE Policy.

### C.    The Bacteria Exclusion in the ACE Policy is Clear and Unambiguous and Contains No Exceptions, Restrictions or Conditions

The ACE Policy contains a broad Fungi or Bacteria Exclusion.  The exclusion provides *in toto*:

**FUNGI OR BACTERIA EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:
COMMERCIAL UMBRELLA LIABILITY POLICY**

This insurance does not apply to "bodily injury", "property damage" or ""personal and advertising injury" arising out of or in any way related to the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "fungi" or bacteria, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to "bodily injury", "property damage" or "personal and advertising injury".

"Fungi" means any type or form of fungus, mold, mildew, mycotoxins, spores, or scents or by-products produced or released by "fungi", but does not include any "fungi" intended by the "insured" for human consumption.

All other terms and conditions of the policy remain unchanged.

*See*, ACE Policy, Exhibit 1 to ACE's Statement of Uncontested Facts and Plaintiffs' Allegations, Fungi or Bacteria Exclusion, Endorsement No. 012 (*emphasis in original*).

The Bacteria Exclusion is clear, unambiguous, and broadly worded to exclude coverage for all claims "arising out of or in any way related to the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of...bacteria...."  There are no exceptions, no provisos, no carve-outs and no restrictions to this broad exclusion to coverage for bacterial exposure. [3]

Courts have applied bacteria exclusions in cases in which Legionella exposure is alleged and have excluded coverage as a result.  For example, in *AMCO Ins. Co. v. Swagat Group, LLC*,

---

[3] The only exception in the Exclusion in the ACE Policy relates to fungi, not bacteria, and is thus irrelevant.  The exclusion does not apply to exposure or ingestion of "fungi intended for human consumption."  The bacteria portion of the exclusion has no similar exception for bacteria "intended for human consumption."

2009 U.S. Dist. LEXIS 9628, (C.D. Ill. Feb. 9, 2009), plaintiffs alleged that a hotel pool and hot tub were contaminated with *Legionella* and that they suffered injuries as a result. The insurer of the hotel operator refused to defend the suit based on a bacteria exclusion in its policy and moved for judgment on the pleadings under Fed. Rule 12(c). The exclusion in that case excluded coverage for exposure to bacteria "on or within a building or structure, including its contents." *Id.* at *5. The Illinois federal district court in *AMCO* concluded that there was no genuine issue of dispute as to the terms of the policy and based on the bacteria exclusion, there was no coverage for the Legionella claims. *Id.* at *10.

In *Union Ins. Co. v. Soleil Group, Inc.*, 2009 U.S. Dist. LEXIS 83770, *5 (D.S.C. May 13, 2009), the insured refused to defend *Legionella* exposure claims and filed a declaratory judgment action as to multiple claims made against its insured. Cross motions for summary judgment were filed on the issue of the insurer's duty to defend the claims related to a bacteria exclusion in the policy which excluded coverage for "actual, alleged, threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, … bacteria within a building or structure, including its contents…." The exclusion in *Soleil Group* also contained the so-called "consumption exception" which applied to both *fungi and bacteria* and provided that the exclusion did not apply to "any fungi or bacteria that are, are on, or are contained in a good or product intended for consumption. *Id.* at *2.

The South Carolina district court in *Soleil Group* concluded that, in light of some of the allegations in the underlying complaints, the insurer had a duty to defend the claims. Reviewing the pleadings, the court determined that the allegations were that the hotel's swimming pool, potable water and HVAC systems were contaminated with *Legionella*; that water was potentially a "good" intended for "consumption" by hotel guests; and that thus the "consumption exception"

in the bacteria exclusion was potentially applicable.  Although the court found, based on the specific allegations and the existence of a "consumption exception" in that policy the insurer had a duty to defend, the court expressly offered no opinion as to whether the insurer would ultimately have a duty to indemnify.  *Id.* at *6.

Likewise, in *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F.Supp. 2d 1367, 1369 (N.D. Ga. 2009), another federal district court examined a bacteria exclusion in a hotel's policy in a case involving *Legionella* exposure.  The bacteria exclusion in *Dillard House* was substantially identical to the one in *Soleil Group* in that it contained the a "consumption exception" for "bacteria that are, are on, or are contained in, a good or product intended for bodily consumption."  *Id.* at *4.  On cross motions for summary judgment, the court determined that the allegations of the complaint could be read to assert that the water in a hot tub is a "good" that was "intended for consumption" by the plaintiff who that contracted Legionnaire's disease and that, in light of the "consumption exception" for bacteria "intended for consumption," the insurer had a duty to defend the claim. [4]

The courts in both *Soleil Group* and *Dillard House* were confronted with injury claims related to *Legionella* detected in hotel hot tubs and swimming pools and generally held that the bacteria exclusion applied to Legionella claims but based on the wording of the specific exclusions in those cases, the insurer had a duty to defend. [5]

The bacteria exclusions at issue in *Soleil Group* and *Dillard House* differed markedly

---

[4] As in *Soleil Group*, the court in *Dillard House* limited its preliminary coverage determination to the insurer's defense obligation and expressly reserved the ultimate issue of coverage under the policy

[5] The parties in both *Dillard House* and *Soleil Group* apparently conceded that *Legionella* is a form of bacteria and that the bacteria exclusion would apply, if it unambiguously excluded coverage for the claims asserted.

from the Bacteria Exclusion in the ACE Policy. The exclusions in the *Soleil Group* and *Dillard House* included an exception to the exclusion known as the "consumption exception" and provided coverage for claims in which the bacteria was "in good or product intended for human consumption." *See, Soleil Group at* *5 and 10; *Dillard House*, at 1370. [6]

Here, there is no "consumption exception" in the ACE Policy for bacteria exposure. Without exception, the ACE Policy clearly and unambiguously excludes coverage for "bodily injury ...arising out of or in any way related to the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of...bacteria, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to bodily injury..." *See*, ACE Policy, Exhibit 1 to Statement of Uncontested Facts and Plaintiffs' Allegations, Fungi or Bacteria Exclusion, Endorsement 012.

Most recently, *Westport Ins. Corp. v. VN Hotel Group, LLC*, 492 Fed. Appx. 986, 2012 U.S. App. LEXIS 22187 (11th Cir. Oct. 25, 2012) determined that a bacteria exclusion did not operate to exclude coverage for *Legionella* exposure based on another exception to the exclusion. In *VN* Hotel, the Eleventh Circuit addressed another form of restricted bacteria exclusion. *VN Hotel* involved a death claim against a hotel operator based on allegations that the decedent inhaled water or water vapors contaminated with *Legionella* in an outdoor spa. The bacteria exclusion in that case provided that there was no coverage for injury "for the actual, alleged, or threatened inhalation of, contact with, exposure to, existence of, or presence of any fungi or bacteria *on or within a building or structure, including its contents*..."Id. at *1. (*emphasis added*). Finding that a separate pollution exclusion in the policy was not applicable, the Eleventh Circuit also determined that the bacteria exclusion did not apply because "an outdoor

spa would not qualify as a 'structure' for purposes of the exclusion." *Id.* at *4.

Here, the Bacteria Exclusion in the ACE Policy contains *no* exception for bacteria intended for bacteria intended for "human consumption" and *no* exception for bacteria not found "on or within a building or structure."   Rather, the Bacteria Exclusion in the ACE Policy is clear and unambiguous; contains no exceptions or restrictions; and invites no dispute as to its absolute application to all claims "arising out of or in any way related" to exposure to bacteria.   On this basis alone, ACE is entitled to summary dismissal of all claims.

### III   Alternatively, The Paternostro, Hesser And Newberry Plaintiffs Allege Exposure Only After The Expiration Of The Ace Policy And Coverage For These Claims Is Not Triggered Under The Ace Policy

Without limitation on the applicability of the blanket Bacteria Exclusion in the ACE Policy, ACE alternatively suggests that coverage under its policy for the Paternostro, Hesser and Newberry claims is not triggered under the ACE Policy because none of these plaintiffs assert exposure to *Legionella* or other bacteria at any time during the pendency of the ACE Policy.

The ACE Policy was in effect for policy period June1, 2011 to June 1, 2012. *See*, Ace's Statement of Uncontested Facts and Plaintiffs' Allegations, ¶ 1 and ACE Policy, Declarations Page, Exhibit 1 thereto. Each of the Paternostro, Hesser and Newberry Plaintiffs allege exposure at the Hotel in December 2012. Specifically, the Paternostro Plaintiffs assert that their decedent Russell Paternostro was exposed to *Legionella* bacteria on December 5, 2012 at the Hotel. *See*, Ace's Statement of Uncontested Facts and Plaintiffs' Allegations, ¶ 7, Doc. 1-2, Paternostro Petition, ¶¶11-12). The Hesser Plaintiffs assert that Hesser was exposed to *Legionella* bacteria on December 16-17, 2012 when she was an overnight guest at the Hotel. *See*, ACE's Statement of Uncontested Facts and Plaintiffs' Allegations ¶ 8, Doc. 1, Hesser Complaint, Case #13-4953, at ¶¶8, 13, 24, and 30.   The Newberry Plaintiffs assert that Newberry was exposed to *Legionella*

bacteria on December 14, 2013, while eating lunch at the Hotel. *See*, ACE's Statement of Uncontested Facts and Plaintiffs' Allegations, ¶ 9, Doc. 1, Newberry Complaint, Case #13-4954, at ¶¶8, 13, 20, and 30.

The ACE Policy expired over six (6) months prior to any of these Plaintiffs' alleged exposure to bacteria.  Under Louisiana law, bodily injury is deemed to "occur" at the time a claimant is exposed to a contaminant.  Only policies in effect at the time a plaintiff is exposed are potentially triggered.  Louisiana adheres to the so-called "exposure trigger" for coverage in toxic tort cases. *See Cole v. Celotex Corp.,* 599 So.2d 1058, 1076-77 (La. 1992).  Policies that were not in place at the time of a plaintiff's exposure are not triggered. *See Grefer v. Travelers Ins. Co.,* 04-1428 (La. App. 5 Cir. 12/16/05); 919 So.2d 758, 765 (no coverage where injurious exposure ceased before policy incepted); *Norfolk Southern Corp. v. California Union Ins. Co.,* 2002-0369 (La. App. 1 Cir. 9/23/03); 859 So.2d 167, 192 (only policies in effect when damage took place potentially provide coverage).

Accordingly, in order for any plaintiff to recover against the ACE Policy, he or she must have alleged that he or she was exposed during the ACE policy period.  Here, the dates of exposure and any potential bodily injury as a result are alleged by Paternostro, Hesser and Newberry to have occurred after the ACE Policy expired.  There was no alleged "occurrence" with respect to any of these Plaintiffs during the ACE Policy period and thus no trigger of coverage under the ACE Policy for these claims.

## CONCLUSION

There is no dispute that both *Legionella* and *Pseudomonas aeruginosa* are "bacteria." There is no dispute that each of the Plaintiffs alleges bodily injury as a result of alleged exposure to bacteria.  The ACE Policy contains an exclusion which, in the broadest terms, precludes

coverage for bodily injury "arising out of or in any way related to" exposure to "bacteria." There are no carving outs, restrictions or conditions whatsoever in the Bacteria Exclusion in the ACE Policy and the exclusion clearly and unambiguously operates to preclude coverage for all claims made in this case.

Alternatively, the Paternostro, Hesser and Newberry Plaintiffs specifically allege exposure dates occurring over (6) months after the ACE Policy expired. Accordingly, there was no occurrence and no trigger of coverage under the ACE Policy for any of these Plaintiffs claims. [7]

For each of the foregoing reasons, there is no coverage under the ACE Policy for any of the Plaintiffs' claims and Ace is entitled to dismissal with prejudice of all such claims, or for such other relief as the Court deems just or appropriate.

/s/ Maureen O. Sullivan
Maureen O. Sullivan, T.A. (#12572)
Karen M. Dicke (#24781)
Janet W. Nowakowski (#32913)
**Lewis Brisbois Bisgaard & Smith LLP**
400 Poydras Street, Suite 1320
New Orleans, LA 70130
Telephone: (504) 322-4100
Facsimile: (504) 754-7569
*Attorneys for ACE Property and Casualty Insurance Company*

---

[7]   The only plaintiff that asserts exposure during the pendency of the ACE Policy is Beleto; however, Beleto's claims are prescribed on the face of his complaint. *See,* Motions to Dismiss filed by Choice Hotels International, Inc., Allied World National Assurance Company. (Docs. 192, 148 and 148-1) and by ACE, filed contemporaneously herewith.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing ACE's Memorandum in Support of Motion to Dismiss All Claims has been served electronically upon all counsel of record who utilize the CM/ECF system and has been mailed to all other counsel of record by placing same in United States First Class Mail, properly addressed and with sufficient postage affixed, this 26th day of August, 2014.

/s/ Maureen O. Sullivan
MAUREEN O. SULLIVAN