UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANGELA PATERNOSTRO, ET AL. | * | CIVIL ACTION NOS.: |
| | * | 2013-0662 c/w |
| VERSUS | * | 2013-4953, 2013-4954, 2013-6602 |
| | * | APPLIES TO ALL CASES |
| CHOICE HOTEL INTERNATIONAL | * | |
| SERVICES CORP., D/B/A CLARION | * | SECTION L(5) |
| INN AND SUITES, ET AL. | * | |
| | * | JUDGE ELDON E. FALLON |
| *    *    *    *    *    *    *    * | | |

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS

MAY IT PLEASE THE COURT:

Defendant, American Guarantee and Liability Insurance Company ("AGLIC") files this Memorandum in Support of its Motion for Judgment on the Pleadings under F.R.C.P. 12(c), respectfully representing to the Court as follows:

## I.    INTRODUCTION

The instant matter involves four (4) consolidated lawsuits brought by various plaintiffs generally alleging exposure to *Legionella* and/or *Pseudomonas aeruginosa* bacteria at the Clarion Inn and Suites in Covington, Louisiana (hereinafter referred to as the "Hotel").

Subsequently, these four suits were consolidated under the instant above-captioned action. Thereafter, on January 22, 2014, the Paternostro Plaintiffs,[1] Hesser,[2] Newberry Plaintiffs,[3] and Beleto Plaintiffs[4] (collectively "Consolidated Plaintiffs") filed their First Supplemental and Amended Complaint and Class Action (Rec. Doc. 94; referred to herein as the "Class Action Petition"), which purports to consolidate their claims and certify a class against defendants Choice Hotels International Services Corp. d/b/a Clarion Inn and Suites ("Choice Hotels"), Century Wilshire, Inc. d/b/a Clarion Inn and Suites ("Century Wilshire"), and other named defendant-insurers, including Allied World National Assurance Company ("Allied World"), ACE Property and Casualty Insurance Company ("ACE"), and AGLIC.

Subsequently, on April 29, 2014, Allied World filed its FRCP 12(b)(6) Motion to Dismiss or, Alternatively, Motion to Strike Class Allegations (Rec. Doc. 148; referred to herein as the "Allied World Motion"). The Allied World Motion seeks to dismiss Allied World "from the consolidated lawsuits because (1) under the express policy language, there is no coverage for bodily injuries allegedly resulting from bacteria; and (2) named plaintiff Beleto's claims have prescribed." (Rec. Doc. 148-1, p. 1). Additionally, the Allied World Motion also seeks to strike the class allegations as they are grossly insufficient. (Rec. Doc. 148-1, p. 1).

---

[1] Originally filed as Case No. 2:13-cv-00662, styled as *Angela Paternostro, Robyn Ortego and Mercedes Paternostro, individually and as surviving heirs of the decedent, Russell Paternostro* (collectively the **"Paternostro Plaintiffs"**) *v. Choice Hotels International Services Corp. d/b/a Clarion Inn and Suites, Century Wilshire, Inc., et al.*
[2] Originally filed as Case No. 2:13-cv-04953, styled as *Marie Hesser* (hereinafter referred to as **"Hesser"**) *v. Choice Hotels International Services Corp. d/b/a Clarion Inn and Suites, Century Wilshire, Inc. d/b/a Clarion Inn and Suites, et al.*
[3] Originally filed as Case No. 2:13-cv-04954, styled as *Gwen Newberry and Robert Newberry* (collectively the **"Newberry Plaintiffs"**) *v. Choice Hotels International Services Corp. d/b/a Clarion Inn and Suites, Century Wilshire, Inc. d/b/a Clarion Inn and Suites, et al.*
[4] Originally filed as Case No. 2:13-cv-06602, styled as *Jason Beleto, individually and on behalf of his minor child, Cruz Beleto* (collectively the **"Beleto Plaintiffs"**) *v. Choice Hotels International Services Corp. d/b/a Clarion Inn and Suites, Century Wilshire, Inc. d/b/a Clarion Inn and Suites, et al.*

On August 26, 2014, ACE filed its Motion to Dismiss All Claims Against ACE Property and Casualty Insurance Company (Rec. Doc. 270; referred to herein as the "ACE Motion").  The ACE Motion seeks to dismiss ACE "on the grounds that the Commercial Umbrella Liability Policy issued by ACE to Choice Hotels International, Inc. contains a broadly worded Bacteria Exclusion which clearly and unambiguously excludes coverage for all claims related in any manner to exposure of any kind to bacteria, including *Legionella and Pseudomona aureginosa*." (Rec. Doc. 270, p. 1).  Alternatively, ACE avers that dismissal is warranted as to the claims by the Paternostro Plaintiffs, Hesser and Newberry Plaintiffs because "each of these Plaintiffs allege that the dates of their respective exposure to *Legionella,* and alleged injury therefrom, occurred over six (6) months after the ACE Policy expired on June 1, 2012."  (Rec. Doc. 270, p. 1).

AGLIC hereby adopts and incorporates by this reference the arguments set forth in the Allied World Motion (Rec. Doc. 148) and ACE Motion (Rec. Doc. 270), in their entirety as AGLIC's own, along with all documents, arguments and evidence submitted in support thereof, as though copied herein *in extenso*.[5]  Additionally, AGLIC seeks dismissal under Fed. R. Civ. P. 12(c) for judgment on the pleadings because AGLIC issued following-form excess policies that follow and adopt the applicable Allied World Policy and ACE Policy (both defined below). Therefore, to the extent this Court grants the Allied World Motion and ACE Motion in each respective party's favor, AGLIC would also be entitled to similar relief as further explained herein.

---

[5] AGLIC has concurrently filed herewith a Motion to Adopt Rec. Doc. 148 and Rec. Doc. 270.

## II.   STATEMENT OF MATERIAL FACTS

AGLIC adopts the relevant factual background set forth in the Allied World Motion and

ACE Motion, and further adds the following relevant and material facts in support of the instant

motion:

### A.   *Relevant Allegations in Filed Class Action Petition*

By virtue of the filing of the Class Action Petition, the Consolidated Plaintiffs added

AGLIC as a defendant in this action "pursuant to the provisions of the Louisiana Direct Action

Statute, LSA-R.S. 22:12698, *et seq.*"  (Rec. Doc. 94, ¶ 2(h)).  They allege that:

> At all times pertinent hereto, and specifically for the period June 1, 2011 –
> June 1, 2013, inclusive, defendant American Guarantee and Liability
> Insurance Company had in full force and effect general liability policies of
> insurance under the terms of which defendant Choice was the named
> insured, and **which afforded excess, general liability insurance**
> **coverage for the matters, risks and claims made the subject of this**
> **action.** The precise terms and numbers embodied in said policy of
> insurance are incorporated herein by reference and are specifically pled
> herein as if set forth *in extenso*.

(Rec. Doc. 94, ¶ 8) (emphasis added).

### B.   *Relevant Responses and Defenses in AGLIC's Responsive Pleadings*

In response to the Class Action Petition, AGLIC filed its Answer and Affirmatives

Defenses (Rec. Doc. 177) on May 23, 2014, as subsequently amended and supplemented on June

6, 2014 to assert additional affirmative defenses (Rec. Doc. 200).  In response to the above-cited

Paragraph 8 of the Class Action Petition, AGLIC answered as follows:

> In response to Paragraph 8 of the First Amended Complaint, AGLIC
> admits that it issued to Choice Hotels International, Inc. et al. the
> following policies of insurance:  Following Form Excess Liability Policy
> No. AEC5345468-06 for the period June 1, 2011 to June 1, 2012 (the
> "**2011-12 AGLIC Policy**"), and Following Form Excess Liability Policy

4

No. AEC5345468-07 for the period June 1, 2012 to June 1, 2013 (the "**2012-13 AGLIC Policy**") (collectively, the 2011-12 AGLIC Policy and 2012-13 AFLIC Policy are referred to as the "**AGLIC Policies**"). The AGLIC Policies, as written instruments, are the best evidence of their contents, and AGLIC pleads the AGLIC Policies' terms, conditions, limitations, exclusions, warranties and definitions as if copied herein *in extenso*. Except as specifically admitted, AGLIC denies the allegations in Paragraph [8] of the First Amended Complaint.

(Rec. Doc. 200, ¶ 2) (emphasis supplied). Additionally, AGLIC asserted the relevant terms, conditions, provisions, limitations, exclusions and definitions of the AGLIC Policies as affirmative defenses to the Consolidated Plaintiff's claims. (*See* Rec. Doc. 200, ¶¶ 3-13). As it relates to this instant motion, the AGLIC Policies[6] are both "Following Form Excess Liability Policy" that provide coverage for insured losses in excess of $25,000,000.00 of the "Controlling Underlying Policy" (Rec. Doc. 200, ¶¶ 3, 12).

### C.     *The 2011-12 AGLIC Policy and underlying ACE Policy*

The 2011-12 AGLIC Policy (*see* Ex. A) provides in relevant parts as follows:

* * *

## SECTION I.  COVERAGE

**A.**     We will pay on behalf of the insured the sums in excess of the total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations that the insured becomes legally obligated to pay as damages.

**B.**     This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item **6.A.** of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

---

[6] A certified copy of the 2011-12 AGLIC Policy is attached hereto as **Exhibit "A."** A certified copy of the 2012-13 AGLIC Policy is attached hereto as **Exhibit "B."** On a motion for judgment on the pleadings, a court considers the pleadings, any written documents attached or referred to in the pleadings, and any matter of which the court can take judicial notice for the factual background of the case. *In re Chinese Manufactured Drywall Products Liab. Litig.*, 759 F.Supp.2d 822 (E.D. La.2010).

5

\* \* \*

(Rec. Doc. 200, p. 4, ¶ 3).  The referenced "Controlling Underlying Policy" designated in Item 6.A. of the Declarations Page under the 2011-12 AGLIC Policy is the Commercial Umbrella Liability Insurance Policy issued by ACE with effective dates of June 1, 2011 to June 1, 2012 (the "ACE Policy").  (Rec. Doc. 200, p. 3-4, ¶ 3; see also Rec. Docs. 270-2 through 270-9). AGLIC further plead and cited the relevant terms, conditions, provisions, limitations, exclusions and definitions of the ACE Policy as affirmative defenses to the Consolidated Plaintiff's claims. (Rec. Doc. 200, ¶ 13, Nineteenth Affirmative Defense, p. 12-15).

> ### D.    *The 2012-13 AGLIC Policy and underlying Allied World Policy*

The 2012-13 AGLIC Policy (*see* Ex. B) provides in relevant parts as follows:

\* \* \*

**SECTION I.  COVERAGE**

    **A.**    We will pay on behalf of the insured the sums in excess of the Total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations that the insured becomes legally obligated to pay as damages.

    **B.**    This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item **6.A.** of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

\* \* \*

(Rec. Doc. 200, p. 9-10, ¶ 12).  The referenced "Controlling Underlying Policy" designated in Item 6.A. of the Declarations Page under the 2012-13 AGLIC Policy is the Umbrella Liability Insurance Policy No. 0307-5775, issued by Allied World with effective dates of June 1, 2012 to June 1, 2013 (the "Allied World Policy").  (Rec. Doc. 200, p. 9-10, ¶ 12; see also Rec. Doc. 148-

6).  AGLIC further plead and cited the relevant terms, conditions, provisions, limitations, exclusions and definitions of the Allied World Policy as affirmative defenses to the Consolidated Plaintiff's claims.  (Rec. Doc. 200, ¶ 13, Twentieth Affirmative Defense, p. 15-21).

Based on the foregoing facts and for the reasons set forth below, AGLIC is entitled to judgment on the pleadings under Fed. R. Civ. P. 12(c).

### III.   <u>STANDARDS OF REVIEW</u>

#### A.   *Judgment on the Pleadings under Fed. R. Civ. P. 12(c)*

A motion for judgment on the pleadings pursuant to F.R.C.P. 12(c) is designed to dispose of a case when the material facts are not in dispute between the parties and only questions of law remain to be decided by the court.  *Hebert Abstracts Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).  The standard for deciding such a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (citations omitted).  As such, in deciding a Rule 12(c) Motion, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  *Id.* (citation omitted).  Thus, where no matters outside the pleadings are presented, "the fact allegations of the complaint are to be taken as true, but those of the answer are taken as true only where and to the extent that they have not been denied or do not conflict with those of the complaint."  *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir.1956) (citations omitted).  In other words, to sustain a judgment on the pleadings alone, such judgment must be based on the undisputed facts appearing in all the pleadings.  *Id.*

Questions of law are appropriate for determination on a Rule 12(c) motion.  See *Illinois Central Gulf Railroad v. Pargas, Inc.*, 526 F. Supp. 209 (M.D. La. 1981), *aff'd.*, 722 F.2d 253 (5th Cir. 1984) (granting motion for judgment on the pleadings requiring interpretation of

contract as a matter of law where there was no dispute as to the accuracy of the contract terms). Consequently, dismissing a case on the basis of an affirmative defense barring recovery is properly done under Rule 12(c), not Rule 12(b)(6). *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 348 (1971).

### B.    *Louisiana Insurance Policy Interpretation*

In a diversity action involving insurance policies issued in Louisiana, the substantive law of Louisiana applies. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007). Under Louisiana law, an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 02–1637, p. 3 (La. 6/27/03); 848 So.2d 577, 580. The words and phrases used in the insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning. La. Civ. Code art. 2047 ("The words of a contract must be given their generally prevailing meaning."). Thus, "[c]ourts applying Louisiana law are not permitted to interpret an insurance policy in a manner that would threaten to modify what is reasonably contemplated by the policy's unambiguous terms." *Rainbow USA, Inc. v. Crum & Forster Specialty Ins. Co.*, 711 F.Supp.2d 655, 663-64 (E.D. La.2010) (Fallon, J.) (citing La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.")). If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Cadwallader*, 848 So.2d at 580. Furthermore, insurance companies are afforded "the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Edwards v. Dougherty*, 883 So. 2d 932, 947 (La. 2004).

8

## IV.    LAW AND ARGUMENT

**A.    The AGLIC Policies are following-form excess policies that follow and adopt the Allied World Policy and ACE Policy; therefore, as a matter of law, AGLIC's liability is predicated on Allied World's and ACE's liability under the applicable policies.**

Based on the plain language and following-form provisions of the AGLIC Policies, the AGLIC Policies follow and adopt the terms, conditions, and exclusions of the applicable underlying Allied World Policy and ACE Policy; therefore, AGLIC's rights, duties, and liability relating to this case is inextricably tied to those of Allied World and ACE.  Under Louisiana law, a "following form" excess policy incorporates by reference the terms, conditions, and agreements of the underlying, i.e., primary, policy of insurance because "excess follows primary."  *Harrison v. Gen. Marine Catering*, CIV.A. 86-1577, 1986 WL 12689, *2 (E.D. La. Oct. 31, 1986) (The "Following-Form Endorsement is used merely to indicate the terms of the policy coverage defining primary insurance also define the terms of coverage for the excess insurance."); accord, *Toston v. Nat'l Union Fire Ins. Co. of Louisiana*, 41,567 (La. App. 2 Cir. 11/3/06); 942 So.2d 1204, 1207 *writ denied*, 2006-2881 (La. 2/2/07); 948 So.2d 1086.  Indeed, the "follow form" designation means that the excess insurance policy "simply follows the conditions and agreements of an underlying policy."  *Toston*, supra (citing *Rivere v. Heroman*, 96-1568 (La.App. 4 Cir. 2/5/97), 688 So.2d 1293, 1294).  "Unless there is an express exception to the form of the underlying insurance, the excess carrier in a follow form policy must act according to the underlying insurance policy's terms."  *Id.* (citing H*artford Accident & Indem. Co. v. Pacific Employers Ins. Co.*, 862 F.Supp. 160 (S.D.Texas 1994)).

Therefore, if a risk is excluded from coverage under the underlying primary policy, it will also be excluded from coverage under the excess carrier's policy because excess follows primary.  See, e.g., *McMillian v. Coating Specialist, Inc.*, 427 F.Supp. 54, 56 (E.D. La. 1976) (Excess insurers cannot be held liable where there is no basis for liability of the primary insurers); *Ticknor v. Rouse's Enterprises*, LLC, CIV. A. 12-1151, 2014 WL 668930 (E.D. La. Feb. 20, 2014) (The following form excess carrier's obligations mirror those of the primary insurer's); *Rivere*, 688 So.2d at 1295 (In its insuring agreement, the excess policy explicitly states that the policy holder must have a primary insurance policy); the excess policy is never to be involved unless damages against the policy holder are in excess of the limits of this underlying insurance.); *Commercial Union Assur. PLC v. Tidewater Marine Serv., Inc.*, 2008-1114 (La.App. 4 Cir. 6/24/09); 15 So.3d 1241, 1244 (The excess policy was by its terms a "following form" policy that provided coverage for any vessel covered by the primary policy.). As such, the terms of the underlying policy, being incorporated by reference in the excess policy, are relevant in determining the excess insurer's rights and duties under its excess policy.  *State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of Louisiana*, 2010-0689 (La.App. 1 Cir. 2/11/11); 56 So.3d 1236, 1244 *writ denied*, 2011-0849 (La. 6/3/11); 63 So.3d 1023.

For example, in *McMillian*, *supra*, the excess policies did not contain certain clauses found in the primary policies.  427 F. Supp. at 55-56.  However, the excess policies provided that "liability shall attach . . . only after the Primary insurers have paid or been held liable to pay the full amount of their respective ultimate net loss liability[.]"  *Id.* at 56.  Additionally, the excess policies were expressly subject to the same "terms and conditions" as the primary insurance.  *Id.* The Court held that because the contracting of a disease by the insured's employee was not an

insurable event under the primary insurance policies, the excess carriers could not be found liable based upon the "following form" provision in the excess policy. *Id.* In so finding, the Court stated that: "The foundation on which excess liability is predicated is primary liability. There being no basis for liability of the primary insurers, the excess insurers cannot be held." *Id.*

Similarly, in the present case, AGLIC's liability, if any, under the 2011-12 AGLIC Policy is predicated on the liability adjudicated and found as to ACE under the ACE Policy. Likewise, AGLIC's liability, if any, under the 2012-13 AGLIC Policy is predicated on the liability adjudicated and found as to Allied World under the Allied World Policy. It is undisputed that AGLIC is an excess, general liability insurer of Choice Hotels. (Rec. Doc. 94, ¶ 8; Rec. Doc. 200, ¶ 2). It is also undisputed that the 2011-12 AGLIC Policy is a following-form excess insurance policy that, by its terms and conditions, follows and adopts the all terms, conditions, and exclusions of the designated "Controlling Underlying Policy" (i.e., the ACE Policy). (Rec. Doc. 200). Likewise, it is further undisputed that the 2012-13 AGLIC Policy is a following-form excess insurance policy that, by its terms and conditions, follows and adopts the all terms, conditions, and exclusions of the designated "Controlling Underlying Policy" (i.e., the Allied World Policy). (Rec. Doc. 200).

Relative to the 2011-12 AGLIC Policy, the underlying ACE Policy contains a bacteria exclusion titled "Fungi or Bacteria Exclusion." (Rec. Doc. 200, p. 14-15; see also Rec. Docs. 270-2 through 270-9). Therefore, by its terms, the 2011-12 AGLIC Policy adopts and follows the bacteria exclusion under the ACE Policy. (Rec. Doc. 200, p. 14-15; see also Rec. Docs. 270-2 through 270-9). Accordingly, to the extent that this Court finds that the Consolidated Plaintiffs' claims are excluded under the ACE Policy by the bacteria exclusion, or otherwise, there is likewise no coverage under the 2011-12 AGLIC Policy.

11

Relative to the 2012-13 AGLIC Policy, the Allied World Policy contains a bacteria exclusion titled "Bacteria Exclusion - Exception for Good or Product Intended for Consumption." (Rec. Doc. 200, p. 20-21; see also Rec. Doc. 148-6, p. 50). Therefore, by its terms, the 2012-13 AGLIC Policy adopts and follows the bacteria exclusion under the Allied World Policy. (Rec. Doc. 200, p. 20-21; see also Rec. Doc. 148-6, p. 50). Accordingly, to the extent that this Court finds that the Consolidated Plaintiffs' claims are excluded under the Allied World Policy by the bacteria exclusion, or otherwise, there is likewise no coverage under the 2012-13 AGLIC Policy.

**B.    AGLIC incorporates the arguments set forth in Allied World Motion (Rec. Doc. 148) and ACE Motion (Rec. Doc. 270) in support of this Motion**

Because the AGLIC Policies are "following-form" excess policies that follow and adopt the underlying policies, AGLIC hereby adopts and incorporates by this reference the arguments set forth in the Allied World Motion (Rec. Doc. 148) and ACE Motion (Rec. Doc. 270), in support of this instant Motion. For the reasons set forth above, to the extent that this Court grants the Allied World Motion and/or the ACE Motion and finds that the Consolidated Plaintiffs' claims are excluded under the Allied World Policy and/or ACE Policy, AGLIC is also entitled to similar relief, finding no coverage under the 2011-12 AGLIC Policy and/or the 2012-13 AGLIC Policy.

**C.    AGLIC is entitled to judgment on the pleadings under Rule 12(c)**

Taking the factual allegations of the Class Action Petition as true (Rec. Doc. 94) and the answer and affirmative defenses asserted by AGLIC (Rec. Docs. 177, 200) as true "only where and to the extent that they have not been denied or do not conflict with those of the complaint," AGLIC is entitled to judgment on the pleadings under Rule 12(c) based on the undisputed facts

appearing in all the pleadings. *Stanton*, 239 F.2d at 106. As explained above, it is not disputed that AGLIC provides excess coverage in this case. (Rec. Doc. 94, ¶ 8; Rec. Doc. 200, ¶ 2). It is also undisputed that the AGLIC Policies are following-form excess insurance policies that, by their identical terms and conditions, follow and adopt the all terms, conditions, and exclusions of the designated "Controlling Underlying Policy" (i.e., the Allied World Policy and ACE Policy). (Rec. Doc. 200). If the Court grants the ACE Motion and finds no coverage for the Consolidated Plaintiffs' claims under the ACE Policy, then coverage is also precluded under the 2012-13 AGLIC Policy. Furthermore, if the Court grants the Allied World Motion and finds no coverage for the Consolidated Plaintiffs' claims under the Allied World Policy, then coverage is also precluded under the 2012-13 AGLIC Policy. Thus, AGLIC is entitled to judgment on the pleadings under Rule 12(c) because the Consolidated Plaintiffs will have failed to state a claim against AGLIC.

## V.   CONCLUSION

In the spirit of the well-recognized axiom "excess follows primary," the defendant, American Guarantee and Liability Insurance Company ("AGLIC"), prays that this Honorable Court grant its Motion for Judgment on the Pleadings, granting judgment on the pleadings under

Fed. R. Civ. P. 12(c) in favor of AGLIC, if the Court finds that there is no basis for liability as to ACE under the ACE Policy and as to Allied World under the Allied World Policy.

Respectfully submitted,

*/s/ Richard E. King*

**RICHARD E. KING (#25128)**
**DAVID M. MORAGAS (#29633)**
**OLIVIA Y. TRUONG (#34990)**
**GALLOWAY, JOHNSON, TOMPKINS,**
**    BURR & SMITH**
701 Poydras Street, Suite 4040
New Orleans, Louisiana  70139
Telephone: (504) 525-6802
Facsimile:  (504) 525-2456

*Counsel for Defendant,*
*American Guarantee and Liability Insurance*
*Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 29th day of August, 2014, undersigned electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Richard E. King*

**RICHARD E. KING**

14