**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ANGELA PATERNOSTRO, ET AL. | CIVIL ACTION |
| VERSUS | NO. 13-0662 |
| CHOICE HOTEL INTERNATIONAL SERVICES CORP., D/B/A/ CLARION INN AND SUITES, ET AL. | SECTION "L" (5) |

## <u>ORDER & REASONS</u>

Before the Court are eight motions[1] filed in connection with the Court's November 17, 2014 Order and Reasons (hereinafter, "Order and Reasons"). (Rec. Docs. 304, 343, 427, 435, 436, 437, 438, 443). The motions include several motions to reconsider, motions for partial judgment, and other motions relating to the Order and Reasons. Having considered the parties' memoranda and the applicable law, the Court now issues this order.

## I.      BACKGROUND

### A.      Procedural Background

This action arises out of the alleged presence of Legionella and Pseudomonas aeruginosa (that is, the causative agent of Legionnaires' disease) at the Clarion Inn and Suites Hotel ("the Hotel") in Covington, Louisiana. Plaintiffs allege that Defendant Choice Hotels International ("Choice") was the franchisor of the Hotel, and Defendant Century Wilshire ("CWI")[2] was the franchisee, owner, and operator of the Hotel. Initially, several Plaintiffs brought this action in state court, both as individuals and as surviving heirs, alleging that on December 4, 2012,

---

[1] The Court denied, in part, Allied World's Motion to Reconsider, (Rec. Doc. 427), orally on the record after hearing oral argument. (*See* Rec. Doc. 471). The remaining portion of the motion to reconsider was taken under advisement and is now addressed herein.

[2] For the sake of clarity, any reference to "CWI" in this Order encompasses its sole shareholder, Theordora Mallick, who was brought into the litigation by Choice, which filed a third party complaint against Ms. Mallick individually, jointly, and severally. (Rec. Doc. 182).

decedent Russell Paternostro was exposed to Legionella while attending a Rotary Club meeting

at the Clarion Inn and Suites Conference Center ("Clarion"). CWI removed to this Court on the

basis of diversity jurisdiction. Thereafter, this Court consolidated the case with several other

related cases which alleged similar factual allegations. Plaintiffs then filed an amended

complaint against the original Defendants and various insurers, incorporating therein class

allegations, (Rec. Doc. 94). Defendants filed amended answers (Rec. Docs. 95, 98, 110, 140,

165, 177, 179, 200). Choice also filed crossclaims against CWI and various insurers. (Rec. Docs.

182, 183, 185, 331). CWI filed a crossclaim of its own against an insurer. (Rec. Doc. 293).

Several insurers filed crossclaims of their own. (Rec. Doc. 208, 291, 292).

> **B.      Factual Background**

Plaintiffs include: (1) surviving relatives of the decedent, Russell Paternostro, specifically

his widow Angela Paternostro, and his children Robyn Ortego and Mercedes Paternostro; (2)

Gwen Newberry and Robert Newberry; (3) Marie Heeser; and (4) Jason Beleto. (Rec. Doc. 94).

Plaintiffs, individually and as class representatives, allege that they suffered injury because of

negligence of Defendants between December 1, 2011 and January 28, 2013. Putative class

representatives allege that they were registered guests and/or invitees at the Hotel between

January 2011 and December 2012 and that Defendants' negligence caused Plaintiffs personal

injuries and medical treatment. Plaintiffs further alleged that this negligence caused or

substantially contributed to the death of Russell Paternostro.

According to Plaintiffs, Choice entered into a plan with CWI in December 2010 to

provide a proper dehumidification system to the Hotel's hot tub and spa area. However, Plaintiffs

say that Choice granted continuous waivers to CWI so that the dehumidification requirement

went unsatisfied, in spite of multiple inspections. Plaintiffs also allege that Choice and CWI

2

failed to properly disinfect the hot tub/spa system with a biocide. According to Plaintiffs, this negligent maintenance and operation resulted in the amplified presence of Legionella and Pseudomonas aeruginosa in the Hotel's hot tub/spa system and thereafter spread through the Hotel, causing injury to Plaintiffs and putative class members. Plaintiffs allege that Louisiana state public health officials on January 22, 2013 warned Defendants that hot tub samples from the Hotel demonstrated a high risk of Legionnaires disease.

Choice and CWI deny liability, including causation. (Rec. Docs. 95, 110). Choice further argues, *inter alia*, that it was the franchisor only for the Clarion Inn & Suites *brand* and did not own or operate the Hotel. It also states that it had no involvement in the use, opening, or closing of the hot tub/spa. Choice moved for dismissal of all claims against it on the grounds of insufficient control. After oral argument, the Court dismissed Plaintiffs' vicarious liability and apparent agency claims against Choice but denied summary judgment on the issue of Choice's independent liability. (Rec. Doc. 471).

As part of this litigation, Plaintiffs sued various insurers of Choice and CWI, pursuant to the Louisiana Direct Action Statute. Both primary and excess liability insurers have been made a part of this litigation.

### C.    November 17 Order and Reasons on Preliminary, Dispositive Motions

On November 17, 2014, the Court issued its Order and Reasons on twenty preliminary dispositive motions. (Rec. Doc. 422). In pertinent part, the Court ruled that (1) at this stage, it would not dismiss the Beleto claims for prescription; (2) some of the insurance policies unambiguously excluded coverage for bacteria such as Legionella and Pseudomonas aeruginosa, while other policies, at this stage, did not unambiguously exclude coverage; (3) the communicable disease exclusion of the Merchants Policy did not, at this stage, unambiguously

exclude coverage; and (4) Louisiana law generally recognizes a broad duty to defend and the Court declined to dismiss crossclaims against Allied World based on Allied's duty to defend arguments.

## II.   PRESENT MOTIONS

### A.   Allied World's Motion to Reconsider

Allied World moves that the Court reconsider a discrete issue in its November 17, 2014 Order and Reasons.[3] (Rec. Doc. 427). Specifically, Allied World argues that the Court's Order and Reasons was unclear as to when its duty to defend would commence. Allied World notes that the Court stated that Allied World "presently" has a duty to defend, which appears to conflict with other language in the Order and Reasons regarding the duty to defend.

Choice responds in opposition to Allied World's motion to reconsider. (Rec. Doc. 441). Choice argues that there is no reason to revisit the issue of the duty to defend absent exhaustion. Century Surety also responds in opposition to Allied World's motion to reconsider. (Rec. Doc. 450). In pertinent part, Century Surety argues that Allied World has a duty to defend because only one of the prongs of the Allied World defense provision requires exhaustion.

### B.   Motions to Reconsider of CWI and Choice

CWI moves for reconsideration in that it seeks clarification regarding the Order and Reasons.[4] (Rec. Doc. 435). Specifically, CWI argues that the Court did not address its argument that the bacteria exclusion in the First Allied Policy was only related to clean-up and/or abatement, thus the exclusion's language is vague and ambiguous and the Court should not have

---

[3] As the Court already has resolved the first part of Allied World's motion, that aspect is not addressed herein. *See supra* note 1.
[4] Choice adopts CWI's motion to reconsider. (Rec. Doc. 436).

found coverage excluded under the First Allied Policy. CWI also argues that the Lexington policy exclusion is vague and ambiguous, thus should not have been found to exclude coverage.

Allied World responds in opposition to CWI's motion to reconsider. (Rec. Doc. 446). In pertinent part, Allied World argues that that CWI is merely re-asserting the same arguments and that the Court already considered its arguments.

### C.       Scottsdale's Motion to Reconsider

Scottsdale moves that the Court reconsider, (Rec. Doc. 437), the Order and Reasons regarding a general "duty to defend" of the insurers under the Scottsdale Policy Group. (*See* Rec. Doc. 422 at 29). Scottsdale notes that no party asked the Court to decide such an issue generally and asserts that the Court did not examine the Scottsdale policy in full.

Century Surety responds in opposition to reconsideration. (Rec. Doc. 450). In pertinent part, Century Surety argues that the mere fact that Scottsdale chose not to file a motion to dismiss does not mean that the Court cannot rule on the issue. Century Surety further argues that it was incumbent on Scottsdale to raise such arguments at the appropriate time, a time which has passed now that the Court issued its Order and Reasons.

Choice also responds. (Rec. Doc. 451). Choice acknowledges that no party filed a motion regarding a coverage determination of the Scottsdale policies issued to Choice. Choice argues, however, that the ruling is binding in regards to the *other* policies analyzed in the Order and Reasons. Choice further recognizes that Scottsdale reserves some of its rights for a later date.

### D.       Two Additional Preliminary Dispositive Motions

Two parties filed preliminary, dispositive motions that were filed too late to be considered at the October 22, 2014 oral argument, thus are now before the Court.

### 1.    Century Surety's motion to dismiss crossclaim/counterclaim

First, Century Surety moves to dismiss the crossclaim/counterclaim of CWI.[5] (Rec. Doc. 304). Century Surety argues that the Century Surety Policy does not provide coverage, and on this basis the bad faith claims of CWI should be dismissed.

CWI responds, arguing that its crossclaim/counterclaim should not be dismissed, incorporating by reference its arguments already made regarding coverage. (Rec. Doc. 390).

By leave of Court, Century Surety replies, in rebuttal. (Rec. Doc. 406).

### 2.    Allied World's motion to dismiss crossclaim

Second, Allied World moves to dismiss the cross-claims of CWI, arguing that it has not breached any duty to CWI. (Rec. Doc. 343). Specifically, Allied World argues that (1) its policies expressly exclude for bacteria, (2) the underlying insurance has not been exhausted, thus Allied World's excess policy is not triggered, and (3) Allied World has acted in good faith and has not denied coverage to CWI.

CWI responds, arguing that its crossclaim against Allied World should not be dismissed. (Rec. Doc. 388). CWI argues that coverage exists and that Allied World's motion is premature. In arguing that the motion is premature, CWI asserts that the Court must make specific factual findings regarding bad faith before addressing the issue.

### E.    Motions for Partial Judgment under Rule 54(b)

Lexington moves for entry of a Rule 54(b) judgment, as the Court has dismissed the claims against it. (Rec. Doc. 438). ACE similarly moves for a Rule 54(b) judgment. (Rec. Doc. 443).

---

[5] CWI's crossclaim seeks a ruling that Century is obligated to defend and indemnity.

Choice opposes Lexington's motion. (Rec. Doc. 447). Choice notes that the argues that the Court cannot enter a partial judgment in favor of Lexington until coverage under the First Allied Policy is a final and determined matter because the Lexington Policy follows the form of the First Allied Policy. Choice asserts that the Court should either certify for appeal *both* or *neither* of the Lexington Policy and the First Allied Policy, since the Court had the same rationale in finding policy exclusions. At the very least, Choice argues, the Court must first rule on the pending motions to reconsider.

CWI also opposes Lexington's motion. (Rec. Doc. 454). CWI argues that there must be "no just reason for delay" to issue a 54(b) judgment, and here the Lexington ruling was a close call that was very similar in nature to the other insurance policies. CWI argues that it would be inefficient for the Court of Appeals – at this time – to consider the "seminal issue" of Lexington's bacteria exclusion and be forced to do so later for all the other litigants. CWI also asks that the Court rule on the motion to reconsider before issuing a 54(b) judgment.

Lexington replies by leave of Court, in rebuttal of the arguments of Choice and CWI. (Rec. Doc. 467).

## III.   DISCUSSION

### A.   Allied World Motion to Reconsider

Allied World argues that the Court should reconsider its November 17, 2014 decision and conclude that Allied World should not be required to immediately defend in the absence of exhaustion of the primary policy.

#### 1.   Standard of law – motion to reconsider

A Federal Rule of Civil Procedure 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of

judgment."[6] *Templet v. HydroChem Inc*., 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule 59(e) serves the narrow purpose of correcting manifest errors of law or fact, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. & Tool Works, Inc*., 910 F.2d 167, 174 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp*., 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). The United States Court of Appeals for the Fifth Circuit has noted that altering, amending, or reconsidering a judgment under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Empl'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). "A Rule 59(e) motion should not be used to re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Techs., Inc*., 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). Yet at the same time, the Rule 59(e) standard "favors denial of motions to alter or amend." *S. Constructors Grp, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

     **2.**      **Duty to defend**

        **a)**      **Allied World's duty to defend**

Allied World argues that, as an umbrella insurer, the Court's November 17, 2014 Order and Reasons was unclear as to when its duty to defend would commence. The Court's Order and

---

[6] Federal Rule of Civil Procedure 54 defines the term "judgment" as "a decree [or] any order from which an appeal lies."

Reasons discussed the broad concept of the duty to defend and noted that Allied World "presently has a duty to defend." [7]

In assessing whether reconsideration is proper on this issue, it is important to note the procedural posture of this case. After the case was removed to (and consolidated in) this Court, a number of insurers filed 12(b) motions to dismiss based on exclusionary provisions in their respective policies. The 12(b) motions were limited to the policies themselves – no meaningful coverage discovery has occurred. Based on these voluminous filings, the Court conducted oral argument on October 22, 2014 to consider jointly all preliminary, dispositive motions. Within the October 22 grouping, Allied World filed several motions to dismiss, including a motion to dismiss the crossclaims of Choice and Century Surety. (Rec. Doc. 254, 257). Allied World argued, *inter alia*, that these crossclaims should be dismissed because Allied World had no duty to defend under the defense provisions of its policies, particularly where the underlying insurance was not yet exhausted.

In light of the complex nature of the insurance issues in this case, the Court re-explains herein its reasoning on the "duty to defend" issue. Upon considering the issue of crossclaims, the Court held that Allied World's policy language, as supported by Louisiana insurance law, indicates that Allied World "*presently* has a duty to defend." (Rec. Doc. 422 at 31-32) (emphasis added).  In other words, the Court declined to dismiss crossclaims against Allied World,

---

[7] Allied World also argues that its "Choice Policy" is not a follow-form policy and the Court incorrectly labeled it as such. Upon re-examination of that argument, the Court acknowledges that Allied World is correct that the bacteria exclusion in Choice Policy is not follow-form, thus the Court retracts its prior ruling on this discrete issue. (*See* Rec. Doc. 422 at 22 n.19. This re-examination does not otherwise alter the November 17, 2014 Order and Reasons, however, for the reason explained on the record at the January 7, 2015 oral argument. (Rec. Doc. 471). That is to say that the bacteria exclusion of Allied's Choice Policy does not unambiguously exclude coverage because its "edible" consumption exception is like those already analyzed by the Court. (Rec. Doc. 422 at 27-28). In light of the Plaintiffs' allegations that Plaintiff Gwen Newberry ate lunch at the Hotel and thus was exposed to Legionella, the consumption exception in the Choice Policy does not unambiguously exclude coverage. (Rec. Doc. 422 at 28). This reasoning applies equally to the other policies in the Second Scottsdale Policy Group. (*See* Rec. Doc. 422 at 22-23).

concluding that at this stage in the litigation it was premature to make a final determination on the scope of Allied World's duty to defend. (Rec. Doc. 422 at 30). Just as the Court denied 12(b) dismissal due to policy language that did not unambiguously exclude coverage, the Court likewise found it proper – at this early stage in the proceedings – to deny dismissal of the crossclaims against Allied World. As explained, with regard to the second prong of the defense provisions of the Allied World Policies, the Court has not definitively ruled that there is a lack of underlying primary insurance coverage. Thus, under the 12(b) standards, the Court refused to grant dismissal for Allied World.

Notably, it is undisputed that, presently, the underlying insurance to the Allied World policies has not been exhausted. Even so, the second prong of the cited Allied World policy states that Allied World must defend when the "damages *sought* because of Bodily Injury . . . *would not be covered* by Scheduled Underlying Insurance . . ." (emphasis added). As the Court repeatedly emphasized in its November 17, 2014 Order and Reasons, it cannot yet make a final determination (for most of the policies) regarding the extent to which coverage applies to Plaintiffs' claims. As mentioned above, there has been insufficient factual discovery on the issue of coverage. Thus, it is not yet clear if the damages sought by Plaintiffs are covered by the scheduled underlying insurance to the Allied Policies. In the event that the damages are not covered by the underlying insurance but are covered by the Allied World Policies, Allied World would definitely owe a duty to defend on this clear policy language. Accordingly, Allied World cannot deny its duty to defend under the second prong until, and if, the Court makes a final determination that the "damages sought" would be covered by the scheduled underlying insurance.

This reading of the policy language aligns with the Louisiana Supreme Court's rule in *American Home Assurance Company v. Czsarniecki* that typically the duty to defend extends to *both* the primary and excess insurer, as long as the *allegations* in the petition for damages do not unambiguously exclude coverage. *See* 230 So. 2d 253, 269-70 (La. 1969). Although this Section of the Court has previously noted that *Czsarniecki* does not create a duty to defend for an excess insurer where such a reading would contravene policy language, *see Lamarque Ford Inc. v. Fed. Ins. Co.*, No. 10-4355, 2011 WL 2020566, at *6 (E.D. La. May 24, 2011), that situation is not present here. Rather, the general *Czsarniecki* principle comports with Allied's cited policy language here. It also comports with general insurance law principles discussed in a similar Legionnaire's disease case, which explains that "the duty to defend exists if the claim *potentially* comes within the policy. Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1373-74 (N.D. Ga. 2009) (internal citation omitted) (quoting 7C Appleman, Insurance Law and Practice § 4684.01).

In support of its arguments for reconsideration, Allied World cites case law containing policies that are dissimilar to the Allied Policies here. In *Lamarque*, this Section of the Court ruled that the insurer has no present to duty to defend, *Czsarniecki* notwithstanding, because the insurance policy "make it clear that the duty to defend under Coverage A is triggered *only under one condition*—that is, if the primary insurer has made payments that reach the policy limit of the underlying insurance." 2011 WL 2020566, at *4 (emphasis added). Similarly, in *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 954 F. Supp. 2d 440, 446 (E.D. La. June 24, 2013), Judge Vance ruled that there was no duty to defend where the insurance policy explicitly provided the permissive *right* to defend but did not require a mandatory duty to defend until exhaustion

11

occurred. *Id.* Unlike the language of the insurance policies in those two cases, which only invoked the duty to defend under one scenario – exhaustion – here the Allied World Policies also provide for the duty to defend under the second prong, irrespective of exhaustion. Therefore, the cases are distinguishable.

Finally, the Court noted in its November 17, 2014 Order and Reasons that should discovery yield facts which reveal that Allied World does not have a duty to defend, the Court will assess those facts and arguments at that time. Currently, however, dismissal of the crossclaims on these grounds – at this 12(b)(6) stage – is inappropriate.

### b)       General duty to defend

The Court feels it is appropriate, however, to clarify the proper interpretation of its discussion of the "duty to defend" in the November 17, 2014 Order and Reasons, as re-explained herein. General principles of insurance law indicate that there is typically a broad duty to defend. *See, e.g.*, *Czarniecki*, 230 So. at 269-70; *see also United Fire & Cas. Co. v. Hixson Bros.,* 453 F.3d 283, 285 (5th Cir. 2006) (explaining that Louisiana law adheres to this principle); *Dillard House, Inc.*, 651 F. Supp. 2d at 1373-74. Nonetheless, as explained above, the duty to defend requires a context-specific analysis of the contractual language of the insurance policy at issue. *See, e.g.*, *Czarniecki*, 230 So. at 269-70; *Lamarque*, 2011 WL 2020566, at *4; *Bollinger*, 954 F. Supp. 2d at 446. Only Allied World has raised the argument that it is entitled to dismissal (of certain crossclaims) based on the language of the defense provisions in its policies. (Rec. Docs. 254, 257). Because the duty to defend is context-specific, and the Court only has analyzed the defense provisions of the Allied World Policies as related to those specific crossclaims, the Court clarifies that its discussion of the duty to defend only applies to Allied World. This is not to say

that the other insurers here are relieved of the duty to defend.[8] The duty to defend is not mutually exclusive, but rather multiple insurers, excess and/or primary, may jointly shoulder that duty. *See Czsarniecki*, 230 So. 2d at 269-70. The Court only means to say that only Allied World has presently raised the issue in the specific context of those crossclaims, thus the Court's discussion regarding the duty to defend, as applied to this case, is confined to Allied World. As Scottsdale notes it its motion to reconsider, the issue of the other insurers' duty to defend was not before the Court, thus it need not be decided at this time. To the extent that the Court was imprecise in its discussion of the general duty to defend in its Order and Reasons, the Court offers this clarification.

If discovery puts forth facts that allow the Court to make a final determination of coverage for an insurer, at that point the Court may be able to definitely conclude whether a duty to defend exists for that party. Until then, however, while Louisiana law recognizes a broad duty to defend, the Court clarifies that its analysis is confined to rejecting Allied World's "no duty to defend" arguments regarding dismissal of its crossclaim.  The status of the other insurers regarding the duty to defend is not before the Court, and the Court will not make findings on such issues.

### B.    Motions to Reconsider by CWI and Choice

CWI and Choice move to reconsider, but their re-asserted arguments are not persuasive. The Court already addressed – and rejected – these arguments. (Rec. Doc. 422 at 23-24). The Court properly reasoned that the First Allied Policy unambiguously excluded coverage. Although

---

[8] In its Order and Reasons, the Court gave the example of Century Surety, which may have a duty to defend under the general principles of insurance law, were the Court to apply those rules in analyzing the defense provisions of the Century Surety Policy. (*See generally* Rec. Doc. 422 at 31, n.22). Just as for the other insurers in this case, this generalized commentary by the Court regarding standard principles of insurance law does not constitute a definitive ruling on the duty to defend for all insurers, including Century Surety, in this case. Rather, it is still an open issue.

CWI argues that one bacteria exclusion related only to clean-up and/or abatement, the Court did not need to specifically address that language because the broad language of the bacteria exclusion specifically applies to losses "including, but not limited to" clean-up and abatement. Nor does CWI point to any manifest error regarding the dismissal of Lexington from this litigation based on its bacteria exclusion.

### C.      Scottsdale's Motion to Reconsider

Scottsdale did not file any motions that were a part of the November 17, 2014 Order and Reasons. Even so, the Court considered a number of motions which fell within the Second Scottsdale Policy Group, thus it was necessary to assess the Second Scottsdale Policy. (*See* Rec. Doc. 422 at 22 n.20, 27-29). As the Court already fully analyzed the policies in Second Scottsdale Policy Group and Scottsdale has not demonstrated a manifest error, there is therefore no reason to reconsider based on Scottsdale's arguments.[9]

### D.      Two Additional Preliminary Dispositive Motions

#### 1.      Century Surety's motion to dismiss crossclaim/counterclaim

The Court has already ruled that dismissal is inappropriate for the Century Surety Policy. (Rec. Doc. 422 at 27-29, 31 n.22). Since Century Surety's central arguments in this motion to dismiss are based in its unchanged position that its policy provides no coverage here, the Court's reasoning in its November 17, 2014 Order and Reasons governs. Dismissal of CWI's crossclaims against Century Surety, thus, is inappropriate.

---

[9] The Court acknowledges that Scottsdale has reserved its right to contest a duty to defend. Regarding the duty to defend, the Court refers Scottsdale to its discussion of the issue herein. *See supra* Part III.A.2.b (re-explaining the general duty to defend here, as it applies to insurers such as Scottsdale).

###### 2.      Allied World's motion to dismiss crossclaim

In the November 17, 2014 Order and Reasons, the Court already addressed all of the arguments in Allied World's motion to dismiss crossclaims. Although the Court found that the First Allied Policy unambiguously excluded coverage, it also found that the Second Allied Policy and the Choice Allied Policy did not unambiguously exclude coverage. The Court also addressed the issue of Allied's duty to defend as it regards exhaustion of the underlying policy, as clarified herein. Dismissal of the crossclaims against Allied World, thus, is inappropriate.

###### E.      Motions for Partial Judgment under Rule 54(b)

Although Lexington and ACE ask for Rule 54(b) judgments in light of the Court's dismissal of all claims against these two parties, CWI raises valid concerns in opposition to a 54(b) judgment. CWI is correct that the bacteria exclusions are substantially similar in this case, and it would be inefficient for the Court of Appeals to consider such substantially similar coverage issues in a piecemeal fashion. These circumstances do not meet the "no just reason for delay standard" in Rule 54(b). Therefore, until coverage issues are resolved in a more complete fashion, 54(b) judgments are inappropriate.

### IV.      CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Allied World's motion to reconsider, (Rec. Doc. 427), is **DENIED,** as re-explained and clarified herein;

**IT IS FURTHER ORDERED** that CWI and Choice's motions to reconsider, (Rec. Docs. 435, 436), are **DENIED,** as re-explained and clarified herein;

**IT IS FURTHER ORDERED** that Scottsdale's motion to reconsider, (Rec. Doc. 437), is **DENIED,** as re-explained and clarified herein;

**IT IS FURTHER ORDERED** that Century Surety's motion to dismiss the crossclaim/counterclaim of CWI, (Rec. Doc. 304), is **DENIED**;

**IT IS FURTHER ORDERED** that Allied World's motion to dismiss the crossclaim of CWI, (Rec. Doc. 343), is **DENIED**;

**IT IS FURTHER ORDERED** that Lexington's motion for a 54(b) judgment, (Rec. Doc. 438), is **DENIED**;

**IT IS FURTHER ORDERED** that ACE's motion for a 54(b) judgment, (Rec. Doc. 443), is **DENIED**;

New Orleans, Louisiana, this 4th day of February, 2015.

_____

UNITED STATES DISTRICT JUDGE