UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANGELA PATERNOSTRO, ET AL. | CIVIL ACTION |
| VERSUS | NO. 13-0662 |
| CHOICE HOTEL INTERNATIONAL SERVICES CORP., D/B/A/ CLARION INN AND SUITES, ET AL. | SECTION "L" (5) |

**THIS DOCUMENT RELATES TO:**    ALL CASES

## ORDER AND REASONS

Before the Court are three substantive motions: (1) Century Surety Company's motion for partial summary judgment to compel Merchants to reimburse and participate in the defense of Century Wilshire ("CWI")[1] and Choice Hotels International ("Choice"). (Rec. Doc. 475); (2) AIG Specialty Insurance Company's ("AIG")[2] motion for summary judgment regarding coverage (Rec. Doc. 476); and (3) Century Surety's newest motion for partial summary judgment regarding Choice Hotels' status as an "additional insured" under the Century Surety Policy. (Rec. Doc. 528). Having considered the parties' briefs, the applicable law, and oral argument on Century Surety's "additional insured" motion, the Court now issues this Order and Reasons.

**I.    BACKGROUND**

    **A.    Procedural Background**

This action arises out of the alleged presence of Legionella and Pseudomonas aeruginosa (that is, the causative agent of Legionnaires' disease) at the Clarion Inn and Suites Hotel ("the Hotel") in Covington, Louisiana. Plaintiffs allege that Defendant Choice was the franchisor of

---

[1] For the sake of clarity, any reference to "CWI" in this Order encompasses its sole shareholder, Theordora Mallick, who was brought into the litigation by Choice, which filed a third party complaint against Ms. Mallick individually, jointly, and severally. (Rec. Doc. 182).
[2] AIG was formerly known as Chartis Specialty Insurance Company, as noted on the pertinent insurance policies.

the Hotel, and Defendant CWI was the franchisee, owner, and operator of the Hotel. Initially, several Plaintiffs brought this action in state court, both as individuals and as surviving heirs, alleging that on December 4, 2012, decedent Russell Paternostro was exposed to Legionella while attending a Rotary Club meeting at the Clarion Inn and Suites Conference Center ("Clarion"). CWI removed to this Court on the basis of diversity jurisdiction. Thereafter, this Court consolidated the case with several other related cases which alleged similar factual allegations. Plaintiffs then filed an amended complaint against the original Defendants and various insurers, incorporating therein class allegations, (Rec. Doc. 94). Defendants filed amended answers (Rec. Docs. 95, 98, 110, 140, 165, 177, 179, 200). Choice also filed crossclaims against CWI and various insurers. (Rec. Docs. 182, 183, 185, 331). CWI filed a crossclaim of its own against an insurer. (Rec. Doc. 293). Several insurers filed crossclaims of their own. (Rec. Doc. 208, 291, 292).

      **B.**     **Factual Background**

Plaintiffs include: (1) surviving relatives of the decedent, Russell Paternostro, specifically his widow Angela Paternostro, and his children Robyn Ortego and Mercedes Paternostro; (2) Gwen Newberry and Robert Newberry; (3) Marie Heeser; and (4) Jason Beleto. (Rec. Doc. 94). Plaintiffs, individually and as class representatives, allege that they suffered injury because of negligence of Defendants between December 1, 2011 and January 28, 2013. Putative class representatives allege that they were registered guests and/or invitees at the Hotel between January 2011 and December 2012 and that Defendants' negligence caused Plaintiffs personal injuries and medical treatment. Plaintiffs further alleged that this negligence caused or substantially contributed to the death of Russell Paternostro.

According to Plaintiffs, Choice entered into a plan with CWI in December 2010 to provide a proper dehumidification system to the Hotel's hot tub and spa area. However, Plaintiffs

say that Choice granted continuous waivers to CWI so that the dehumidification requirement went unsatisfied, in spite of multiple inspections. Plaintiffs also allege that Choice and CWI failed to properly disinfect the hot tub/spa system with a biocide. According to Plaintiffs, this negligent maintenance and operation resulted in the amplified presence of Legionella and Pseudomonas aeruginosa in the Hotel's hot tub/spa system and thereafter spread through the Hotel, causing injury to Plaintiffs and putative class members. Plaintiffs allege that Louisiana state public health officials on January 22, 2013 warned Defendants that hot tub samples from the Hotel demonstrated a high risk of Legionnaires disease.

Choice and CWI deny liability, including causation. (Rec. Docs. 95, 110). Choice further argues, *inter alia*, that it was the franchisor only for the Clarion Inn & Suites *brand* and did not own or operate the Hotel. It also states that it had no involvement in the use, opening, or closing of the hot tub/spa. Choice moved for dismissal of all claims against it on the grounds of insufficient control. After oral argument, the Court dismissed Plaintiffs' vicarious liability and apparent agency claims against Choice but denied summary judgment on the issue of Choice's independent liability. (Rec. Doc. 471).

As part of this litigation, Plaintiffs sued various insurers of Choice and CWI, pursuant to the Louisiana Direct Action Statute. Both primary and excess liability insurers have been made a part of this litigation.

### C. November 17, 2014 Order and Reasons on Preliminary, Dispositive Motions

On November 17, 2014, the Court issued its Order and Reasons on twenty preliminary dispositive motions. (Rec. Doc. 422). In pertinent part, the Court ruled that (1) at this stage, it would not dismiss the Beleto claims for prescription; (2) some of the insurance policies unambiguously excluded coverage for bacteria such as Legionella and Pseudomonas aeruginosa, while other policies, at this stage, did not unambiguously exclude coverage; (3) the

communicable disease exclusion of the Merchants Policy did not, at this stage, unambiguously exclude coverage; and (4) Louisiana law generally recognizes a broad duty to defend and the Court declined to dismiss crossclaims against Allied World based on Allied's duty to defend arguments.

  **D.**  **Choice Hotels – Control**

In January 2015, the Court heard oral argument on Choice Hotels' motion for summary judgment on the issue of control. Specifically, Choice argued that (1) it could not be held vicariously liable for the actions of its independent contractor, CWI, and (2) it could not be found independently liable under the facts presented. The Court granted Choice's motion in part, as to the claims of vicarious liability, but otherwise denied the motion, ruling that Plaintiffs' claims of independent negligence were plausible at this stage in the litigation.

  **E.**  **February 4, 2015 Order and Reasons**

In a February 4, 2015 Order and Reasons, the Court next considered a number of motions related to the November 2014 Order and Reasons, some of which requested clarification on several points. First, the Court clarified the scope of its ruling on the duty to defend: the Court's November 2014 Order and Reasons only considered the "duty to defend" issue in the specific context of Allied World's crossclaims. As the Court stated in its February 2015 Order and Reasons: "the Court declined to dismiss crossclaims against Allied World, concluding that at this stage in the litigation it was premature to make a final determination on the scope of Allied World's duty to defend." The Court's discussion on the duty to defend did not establish, or preclude, any ruling on the issue as applied to other insurers in this litigation.

Second, the February Order and Reasons denied motions to reconsider from other parties, who largely were rehashing prior arguments. Third, the Court denied several motions on policy exclusionary provisions because those motions were rendered moot by the November 17 Order

and Reasons. Fourth, the Court denied motions for partial 54(b) judgments, which had been filed by parties dismissed from the litigation. The Court ruled that "it would be inefficient for the Court of Appeals to consider such substantially similar coverage issues in a piecemeal fashion."

## II.     PRESENT MOTIONS

The following motions are presently before the Court:

### 1.     Century Surety's motion for partial summary judgment to compel Merchants

Century Surety again moves for partial summary judgment to compel Merchants to reimburse and participate in the defense of CWI and Choice. (Rec. Doc. 475). Choice and CWI support Century Surety's motion. (Rec. Docs. 479, 482). In support of the motion, movants argue that the Court's November 2014 ruling, which in pertinent part denied Merchant's motion to dismiss, indicates that Merchants has a duty to defend pursuant to the Merchants Policy. Century Surety argues that the Court's November 2014 ruling indicates that the Merchants Policy provides coverage. The parties thus argue that Merchants is obligated to participate in the defense of Choice.

Merchants opposes, asserting that Century Surety's motion is ambiguous as to the relief it seeks and that the Court has not found that Merchants has a duty to defend. (Rec. Doc. 480). Merchants argues that there is a genuine issue of material fact on the issue because the Court has ruled that it is unclear whether the Merchants Policy provides coverage. Therefore, Merchants argues, Century Surety's motion should be denied.

Century Surety replies, by leave of Court. (Rec. Doc. 487).

### 2.     AIG's motion for summary judgment

AIG moves for summary judgment regarding coverage on its Choice Hotels policy with a Policy Period from January 1, 2010 to January 1, 2013, ("the First AIG Policy"). (Rec. Doc. 476-

6).[3] AIG argues that Choice did not meet the notice provisions of the First AIG Policy. Specifically, AIG argues that under the "Acquired Properties Endorsement" of the First AIG Policy, coverage is excluded for any loss at any property of which Choice first entered a franchise agreement after policy inception, unless Choice provides notice within one year of execution of the franchise agreement. According to AIG, Choice did not provide notice of the execution of the Franchise Agreement with CWI ("the Franchise Agreement") until August 2014 – three and a half years after execution. Therefore, AIG argues, the Court should dismiss all Plaintiffs' claims asserted against the First AIG Policy.

     Choice opposes. (Rec. Doc. 499). First, it argues that the Choice Hotels policy with a Policy Period from January 1, 2013 to January 1, 2016 ("the Second AIG Policy") clearly provides coverage here, thus dismissal of all claims against AIG would be inappropriate. Choice asserts that the language of the Acquired Properties Endorsement in the Second AIG Policy is less restrictive than the exclusion in the First AIG Policy and provides coverage. Second, Choice argues that the First AIG Policy also provides coverage. Specifically, Choice argues that AIG waived any coverage defense under the Acquired Properties Endorsement because AIG failed to notify Choice of its coverage position and failed to obtain information about franchise properties. Choice notes that AIG sent its reservation of rights letter well beyond a "reasonable time." Because AIG waived the coverage defense, Choice argues, the First AIG Policy provides coverage and AIG's motion should be denied.

     Plaintiffs also oppose AIG's motion. (Rec. Doc. 503). First, they adopt Choice's opposition. Second, Plaintiffs argue that there was a continuation of coverage from the First AIG Policy, extending the end of the First AIG Policy from January 1, 2013 to June 1, 2013 and

---

[3] In its reply brief, AIG clarifies that this motion for summary judgment only addresses the First AIG Policy and does not seeks dismissal of any claims asserted against the Second AIG Policy. AIG reserves its right to later address claims asserted against the Second AIG Policy.

retroactive endorsements dating back to January 1, 2010, one of which expressly provided coverage for franchisees of Choice. At the very least, Plaintiffs argue, these are genuine issues of material fact that preclude granting AIG's motion for summary judgment.

AIG replies, by leave of Court. (Rec. Doc. 509). First, AIG clarifies that its motion only seeks dismissal of claims sought under the First AIG Policy and that any arguments surrounding the Second AIG Policy are irrelevant. Second, AIG rejects Plaintiffs' continuation argument, asserting that the "continuation" endorsements cited by Plaintiffs are actually part of the separate and distinct Second AIG Policy. Third, AIG argues that it did not waive any coverage defenses.

### 3. Century Surety's motion for partial summary judgment regarding Choice's status as an "additional insured"

Century Surety again moves for partial summary judgment, seeking a dismissal of Choice's crossclaim against Century Surety and seeking a declaration that Choice does not qualify as an "additional insured" under the Century Surety Policy, notwithstanding that Choice is named as an "additional insured" in the Policy. (Rec. Doc. 528). Century Surety notes that the only remaining claims against Choice are solely for Choice's independent liability, thus under the policy language – that Choice is an insured "with respect to [its] liability as grantor of a franchise to [CWI]" – Choice cannot be an additional insured for such claims.

CWI, Choice, and AIG oppose, arguing that that the phrase "with respect to [its] liability as grantor of a franchise to [CWI]" encompasses **all** potential liability of Choice, including Choice's independent liability. (Rec. Docs. 540, 541, 544). Thus, they argue, Century Surety's motion should be denied.

**III.    ANALYSIS**

The Court will discuss the present motions in turn.

**A.    Century Surety's motion for partial summary judgment to compel Merchants**

The Court will deny Century Surety's motion for partial summary judgment to compel Merchants to reimburse and participate in the defense of Defendants. A ruling in Century Surety's favor on this issue would be premature considering that the Court's November 2014 Order and Reasons does not constitute a ruling that the Merchants Policy provides coverage. Rather, as the Court took pains to explain in its November 2014 Order and Reason and again in its February 2015 Order and Reasons, the Court's denials of the motions to dismiss on the basis of coverage do not constitute a definitive ruling that the policies in question provide coverage. Just as the Court ruled that it would be premature to make a final determination as to Allied World's duty to defend where it could not yet make a final determination regarding coverage under Allied World's policies, the Court likewise concludes that it cannot rule on Merchant's duty to defend where the question of coverage under the Merchants Policy is still unclear. The questions of reimbursement and contribution are thus unclear at this stage of the litigation. The Court will address those questions at the appropriate time. As there are genuine issues of material fact surrounding coverage, Century Surety's motion for partial summary judgment will be denied.

**B.    AIG's motion for summary judgment**

**1.    Governing contractual provisions**

To assess AIG's motion that the First AIG Policy does not provide coverage here, the Court must first determine which contractual provision governs. The Acquired Properties Endorsement of the First AIG Policy reads:

8

> It is hereby agreed that Section III. **EXCLUSIONS**, Paragraph **K. ACQUIRED PROPERTIES** is deleted in its entirety and replaced with the following:
>
> [This insurance does not apply to Loss . . .]
>
> **K. ACQUIRED PROPERTIES:**
>
> Arising from **Pollution Conditions** at any property the **Insured** first acquires, leases, manages, rents, maintains a franchise agreement or occupies *after* the **Inception Date**, unless such coverage for such property is specifically scheduled on this Policy by endorsement.
>
> However, this Exclusion shall not apply to:
>
> Any real property newly owned, leased, rented, franchised or occupied by the **Insured** during the **Policy Period** and after the **Inception Date**, provided:
>
> . . .
>
> b. Before or within one calendar year from the execution of the franchise agreement for such property(s), the **Named Insured** provides notice of the execution of the franchise agreement in writing to the Company's underwriter for all newly franchised locations . . .

(Rec. Doc. 476-6 at 32) (italics added). The parties agree that the Acquired Properties Endorsement, with the above-noted language, is part of the First AIG Policy. The parties dispute, however, whether the later "Broad Named Insured Endorsement," effective June 1, 2013, effectively supersedes the above-mentioned Acquired Properties Endorsement. (Rec. Doc. 503-2 at 46). The Broad Named Insured Endorsement specifically provides coverage to Choice franchisees without the same notice requirements of the above-mentioned Acquired Properties Endorsement. Although the parties do not contest the language of the Broad Named Insured Endorsement, they dispute which policy it is a part of. AIG contends that the Broad Named Insured Endorsement is not part of the First AIG Policy but rather is part of the Second AIG Policy. Thus, AIG argues, it does not supersede the Acquired Properties Endorsement of the First Policy, but rather is part of the Second AIG Policy. In contrast, Plaintiffs argue that the Broad Named Insured Endorsement is a continuation of the First Policy.

9

To determine whether the Broad Named Insured Endorsement supersedes the above-mentioned Acquired Properties Endorsement, the Court turns to the policy language. Under Louisiana law, the terms of the parties' contract, including an insurance contract, form the law governing their dispute. La. Civ. Code arts. 1901, 1912. On the one hand, the First and Second AIG Polices have the same Policy Number: 15450516. Even so, the Declarations Page of the Second AIG Policy lists the "Policy Period" as June 1, 2013 to June 1, 2016. The Second AIG Policy later contains a "Retroactive Date Endorsement." (Rec. Doc. 503-2 at 40). In pertinent part the Retroactive Date Endorsement reads:

> [AIG agrees] [t]o pay on behalf of the Insured, Loss that the Insured is legally obligated to pay as a result of Claims for Bodily Injury, Property Damage or Clean-Up Costs resulting from Pollution Conditions that commenced on or after the Retroactive Date [January 1, 2010], *provided* such Claims are first made against the Insured and reported to the Company, in writing, during *the Policy Period, or during the Extended Reporting Period if applicable*. (emphasis added).

Notably, although this Endorsement extends the Retroactive Date for an *injury* dating back to January 1, 2010, it does not does make retroactive the *Policy Period* of the Second AIG Policy, but rather specifically requires that the demand be made during the listed Policy Period, which is June 1, 2013 to June 1, 2016. As this Policy Period is distinct from that in the First AIG Policy, and both Policies have different contractual language, the Court concludes that the First and Second AIG Policies are indeed separate and distinct contracts. The Court rejects Plaintiffs' "continuation" arguments regarding the January 1, 2013 to June 1, 2013 extension. The Broad Named Insured Endorsement does not constitute "continuation" of coverage, as Plaintiffs argue. Under the unambiguous policy language of the Second AIG Policy, it does not follow that the Broad Named Insured Endorsement, which is part of the Second AIG Policy, supersedes the First AIG Policy. Accordingly, the language of the Acquired Properties Endorsement of the First AIG Policy governs the instant dispute.

### 2. Waiver of the First AIG Policy's notice requirement

Having determined the governing policy language, the Court now turns to the question of whether Choice failed to comply with the terms of the Acquired Properties Endorsement such that the First AIG Policy does not provide coverage to a Loss at the Hotel. Under the plain language of the Acquired Properties Endorsement, Choice must give notice within one year of execution of any new franchise agreement in order for the franchised property to have insurance coverage. Although it is undisputed that Choice (1) had not executed the Franchise Agreement until after the inception date of the First AIG Policy and (2) did not notify AIG of the Franchise Agreement with CWI until after the one-year deadline, the parties vigorously dispute whether AIG waived this notification requirement.

The issue of waiver under the First AIG Policy does not involve any genuine issue of material fact. Rather, the plain language of the First AIG Policy resolves the issue. It is undisputed that the First AIG Policy imposes a one-year notice requirement and that Choice did not comply with that one-year deadline. Although Choice and Plaintiffs argue that AIG waived this coverage defense by waiting more than a reasonable time to assert it, the plain language of the First AIG Policy disposes of this argument. The First AIG Policy does not contain any such waiver provision, nor does it impose any duty upon AIG to affirmatively inquire about such a Franchise Agreement. Rather, the First AIG Policy imposes upon *Choice* the duty of notifying AIG within one of any Franchise Agreement in order to assert coverage for that Franchise Agreement. It is undisputed that Choice did not timely comply with the notice provision. Therefore, summary judgment is appropriate regarding the First AIG Policy. The First AIG Policy does not provide coverage to a Loss at the Hotel.

**C.  Century Surety's motion for partial summary judgment regarding Choice's status as an "additional insured"**

The Court will deny Century Surety's motion which seeks a declaration that Choice does not qualify as an "additional insured" under its Policy. The policy language reads:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ADDITIONAL INSURED – GRANTOR OF FRANCHISE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name Of Person or Organization**
CHOICE HOTELS INTERNATIONAL, INC.
C/O MARSH, A SERVICE OF SEABURY & SMITH INC
PO BOX 14404
DES MOINES, IA 50306-3404

(If no entry appears above, information required to complete this endorsement will be
shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person(s) or organization(s) shown in the Schedule, *but only with respect to their liability as grantor of a franchise to you.* [italics added].

The contract language cited by Century Surety does not unambiguously exclude Choice as being an "additional insured" for claims of its independent liability as a franchisor. Plaintiffs' claims against Choice allege that Choice is liable for Choice's independent responsibilities as a grantor of a franchisor. For example, Plaintiffs claim that Choice was negligent in failing to comply with Choice's responsibilities under the Franchise Agreement, such as Choice's failure to ensure compliance with the Product Improvement Plan. Such an allegations falls within the "grantor of a franchise" language. Hypothetically, Century Surety's motion might be grantable if the allegations were entirely outside the scope of the Choice's role as franchisor. For example, if

12

a Choice employee injured a hotel patron with a vehicle while the Choice employee was out to lunch, perhaps Century Surety's motion would have merit. But here, the allegations assert Choice's liability as a franchisor, including Choice's independent liability as a franchisor. Nothing in the policy language distinguishes between vicarious liability and independent liability, as Century Surety argues. Therefore, the Policy language does not unambiguously exclude coverage for claims of independent franchisor liability.

The case law cited by Century Surety bolsters this reasoning. For instance, in *Edwards v. Brambles Equipment Servs.*, 75 Fed.App'x 929, 932 (E.D. La. Sept. 16, 2003) (Fallon, J.), the Court ruled that a party was not covered as an "additional insured" for independent negligence because the policy language specifically excluded coverage for liability of the party's "independent acts or omissions." Here, there is no evidence of any such exclusion. For these reasons, the Court will deny Century Surety's motion.

## IV. CONCLUSION

For the foregoing reasons, accordingly,

**IT IS ORDERED** that Choice and CWI's motions for joinder, (Rec. Docs. 479, 482) are **GRANTED** in that they adopt the arguments of Century Surety's motion for partial summary judgment.

**IT IS FURTHER ORDERED** that Century Surety's motions for partial summary judgment, (Rec. Doc. 475, 528), are **DENIED**.

**IT IS FURTHER ORDERED** that AIG's motion for summary judgment regarding the First AIG Policy, (Rec. Doc. 476), is **GRANTED**.

New Orleans, Louisiana, this 3rd day of June, 2015.

_____
UNITED STATES DISTRICT JUDGE