UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANGELA PATERNOSTRO, ET AL. | CIVIL ACTION |
| VERSUS | NO. 13-0662 |
| CHOICE HOTEL INTERNATIONAL SERVICES CORP., D/B/A/ CLARION INN AND SUITES, ET AL. | SECTION "L" (5) |

**THIS DOCUMENT RELATES TO:    ALL CASES**

### ORDER AND REASONS

Before the Court are three Rule 12 Motions to Dismiss and/or Strike Plaintiffs' Class Action Allegations filed by the following defendants: (1) Choice Hotels International, Inc.'s ("Choice") (R. Doc. 562); (2) Century Wilshire, Inc.'s ("CWI")[1] (R. Doc. 563); and (3) Allied World National Assurance Company, American Guarantee and Liability Insurance Company, AIG Specialty Insurance Company, Merchants National Insurance Company, National Surety Company, Ohio Casualty Insurance Company, and Scottsdale Insurance Company ("Insurers") (R. Doc. 566) (collectively, "Defendants"). Having considered the parties' briefs, the applicable law, and oral argument on the motion, the Court now issues this Order and Reasons.

**I.    BACKGROUND**

   **A.    Procedural Background**

This action arises out of the alleged presence of *Legionella* and *Pseudomonas aeruginosa* (that is, the causative agent of Legionnaires' disease) at the Clarion Inn and Suites Hotel ("the Hotel") in Covington, Louisiana. Plaintiffs allege that Defendant Choice was the franchisor of the Hotel, and Defendant CWI was the franchisee, owner, and operator of the Hotel. Initially, several Plaintiffs brought this action in state court, both as individuals and as surviving heirs,

---

[1] This Motion is joined by Defendants Century Surety Company and Merchants National Insurance Company.  (R. Docs. 567, 568)

alleging that on December 4, 2012, decedent Russell Paternostro was exposed to *Legionella* while attending a Rotary Club meeting at the Clarion Inn and Suites Conference Center ("Clarion"). CWI removed to this Court on the basis of diversity jurisdiction. Thereafter, this Court consolidated the case with several other related cases which alleged similar factual allegations. Plaintiffs then filed an amended complaint against the original Defendants and various insurers, incorporating class allegations therein. (R. Doc. 94). Defendants filed amended answers. (R. Docs. 95, 98, 110, 140, 165, 177, 179, 200). Choice also filed crossclaims against CWI and various insurers. (R. Docs. 182, 183, 185, 331). CWI filed a crossclaim of its own against an insurer. (R. Doc. 293). Several insurers filed crossclaims of their own. (R. Doc. 208, 291, 292). As part of this litigation, Plaintiffs sued various insurers of Choice and CWI, pursuant to the Louisiana Direct Action Statute. Both primary and excess liability insurers have been made a part of this litigation.

  **B.**  **Factual Background**

Plaintiffs include: (1) surviving relatives of the decedent, Russell Paternostro, specifically his widow Angela Paternostro, and his children Robyn Ortego and Mercedes Paternostro; (2) Gwen Newberry and Robert Newberry; (3) Marie Heeser; and (4) Jason Beleto. (R. Doc. 94). Plaintiffs, individually and as class representatives, allege that they suffered injury because of negligence of Defendants between December 1, 2011 and January 28, 2013. Putative class representatives allege that they were registered guests and/or invitees at the Hotel between January 2011 and December 2012 and that Defendants' negligence caused Plaintiffs to sustain personal injuries requiring medical treatment. Plaintiffs further alleged that this negligence caused or substantially contributed to the death of Russell Paternostro.

The Hotel has a spa area for their guests. The area contains a hot tub. According to Plaintiffs, Choice entered into a plan or agreement with CWI in December 2010 to provide a

proper dehumidification system to the Hotel's hot tub and spa area. However, Plaintiffs say that Choice granted continuous waivers to CWI so that the dehumidification requirement went unsatisfied, in spite of multiple inspections. Plaintiffs also allege that Choice and CWI failed to properly disinfect the hot tub/spa system with a biocide. According to Plaintiffs, this negligent maintenance and operation resulted in the amplified presence of *Legionella* and *Pseudomonas aeruginosa* in the Hotel's hot tub/spa system and that it spread through the Hotel, causing injury to Plaintiffs and putative class members. Plaintiffs allege that Louisiana state public health officials on January 22, 2013 warned Defendants that hot tub samples from the Hotel demonstrated a high risk of Legionnaires' disease.

Legionnaires' disease is caused by *Legionella* bacteria, which are usually found in condensation, steam, and water. http://www.cdc.gov/legionella/about/causes-transmission.html. Individuals contract Legionnaires' disease by breathing in mist or vapor containing *Legionella* bacteria. *Id.* The bacteria are not spread from one person to another person. *Id.* Legionnaires' disease is a form of pneumonia; its symptoms (like those of pneumonia) include cough, shortness of breath, high fever, muscle aches, and headaches. http://www.cdc.gov/legionella/about/signs-symptoms.html. A milder infection, also caused by inhaling *Legionella* bacteria, is known as Pontiac fever. The symptoms of Pontiac fever are similar to those of Legionnaires' disease; however, Pontiac fever is not a form of pneumonia. *Id. Pseudomonas aeruginosa* is a bacteria that can cause *Pseudomonas* infection. http://www.cdc.gov/hai/organisms/pseudomonas.html. Unlike *Legionella* bacteria, *Pseudomonas aeruginosa* requires direct physical contact with the bacteria in order to cause an infection. *Id. Pseudomonas* infections usually occur in people with weakened immune systems and/or patients in the hospital. *Id.* However, healthy people can also develop *Pseudomonas* infections, especially after exposure to the bacteria. Symptoms associated with *Pseudomonas* infections include skin rashes and ear infections. *Id.*

Choice and CWI deny liability, including causation. (R. Docs. 95, 110). Choice further argues, *inter alia*, that it was the franchisor only for the Clarion Inn & Suites *brand* and did not own or operate the Hotel. It also states that it had no involvement in the use, opening, or closing of the hot tub/spa. Choice moved for dismissal of all claims against it on the grounds of insufficient control. After oral argument, the Court dismissed Plaintiffs' vicarious liability and apparent agency claims against Choice but denied summary judgment on the issue of Choice's independent liability. (R. Doc. 471).

  **C.** **Supplemental and Amended Complaints and Class Actions**

A brief summary of the complaints may be useful here. Plaintiffs filed their First Supplemental and Amended Complaint and Class Action on January 22, 2014 raising class action allegations and requesting certification pursuant to Rule 23(b)(1)(A), (b)(2), and (b)(3). (R. Doc. 94). Plaintiffs' allegations and theories of liability arise out of their alleged exposure to *Legionella* and/or *Pseudomonas aeruginosa* at the Covington Clarion between January 2011 and December 2012. *Id.* On February 12, 2015, Plaintiffs filed their Second Supplemental and Amended Complaint and Class Action, adding as defendants various insurers who had issued policies to Choice and/or CWI. (R. Doc. 502). Thereafter, Plaintiffs filed a Third Supplemental and Amended Complaint and Class Action ("Third Complaint") on April 30, 2015, removing (b)(3) certification theories and removing all claims for monetary relief. (R. Doc. 520). The Third Complaint sought only injunctive and declaratory relief in the form of a publication notice regarding the pertinent health information concerning *Legionella* exposure in addition to the establishment of a medical monitoring program for putative class members. *Id.*

On March 16, 2015, pursuant to the Court's Order of February 12, 2015 (R. Doc. 501), Plaintiffs filed their Memorandum of Legal Authority for Class Certification, which submits that class certification on the issues of liability and general causation is appropriate under Rule

4

23)(c)(4).  (R. Doc. 515).  Additionally, on August 27, 2015, the Court granted the Plaintiffs' Motion for Leave to File a Fourth Supplemental and Amended Complaint and Class Action ("Fourth Complaint"). (R. Doc. 574).  The Fourth Complaint removed class action allegations seeking relief in the form of medical monitoring and added Darrin and Jan Wood as additional class representatives. *Id*.

## II. MOTIONS TO DISMISS AND/OR STRIKE CLASS ACTION ALLEGATIONS

As the three motions to dismiss are substantively similar, the Court's analysis applies equally to all three motions.  Defendants argue that Plaintiffs have failed to meet the requirements of Rule 23 in order to plead a certifiable class and so their class action allegations should be dismissed or stricken.  In both their Third and Fourth Complaints, Plaintiffs removed their requests for a Rule 23(b)(3) class and monetary damages and request class certification only for declaratory relief on the issues of liability and general causation pursuant to subsections (b)(1)(A) and/or (b)(2).  However, Defendants argue that even with these revised class allegations, Plaintiffs still cannot meet the requirements of Rule 23 because the nature of the relief sought is not appropriate for certification under (b)(1)(A) or (b)(2).  Defendants further argue that the Plaintiffs cannot sever and certify only certain legal issues under 23(c)(4) "to circumvent the requirements of Rule 23(b) and attempt to salvage a class action that would otherwise be improper." (R. Doc. 566-1 at 2).  Thus, the issue before this Court is whether Plaintiffs' Third and Fourth Complaint plead the minimum facts necessary to satisfy the Requirements of Rule 23.

## III. LEGAL STANDARD

As set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the standard to be applied when deciding a Rule 12(b)(6) motion is not whether it is conceivable that some set of facts could be developed to support the

allegations in the complaint, but rather whether the plaintiffs have stated enough facts in the complaint to allow a court to conclude that it is "plausible" that the plaintiffs are entitled to relief. The Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1572 (5th Cir.1988).

The court may dismiss class allegations via a motion to strike under Rule 12(f) (as "immaterial allegations"). In particular, a court can strike class allegations "where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate." See *Aguilar v. Allstate Fire and Cas. Ins. Co.,* No. 06–4660, 2007 WL 734809, at *2 (E.D.La. Mar.6, 2007). Courts apply the same standard in ruling on a motion to strike under Rule 12(f) and a motion for judgment on the pleadings under Rule 12(c) as in determining a motion to dismiss under Rule 12(b)(6).

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Foundation,* 493 F.3d 521, 523 (5th Cir.2007). A class may be certified if (1) "the class is so numerous that joinder of all members is impracticable," (2) "there are questions of law or fact common to the class," (3) the claims or defenses that will be presented by the class representatives are "typical of the claims or defenses of the class," and (4) the class representatives "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Rule 23(a) must be satisfied by all proposed class actions.

However, simply satisfying the requirements of Rule 23(a) is not sufficient to certify a class. A class action must also satisfy one of the three subsections of Rule 23(b). *See Amchem Prods.,* 521 U.S. at 614. The party seeking class certification bears the burden of showing that all

6

of the criteria are met. "If the court determines that the prerequisites of Rule 23 are not satisfied, then the court may issue an order 'requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons.'" *Caruso v. Allstate Ins. Co.*, No. CIV.A. 06-2613, 2007 WL 2265100, at *2 (E.D. La. Aug. 3, 2007) (quoting *Thompson v. Merck & Co., Inc.,* 2004 WL 62710, at *2 (E.D.Pa. Jan. 6, 2004) ").

## IV.  LAW & ANALYSIS

Although Defendants argue that Plaintiffs fail to satisfy the pre-requisites outlined in Rule 23(a), the crux of their argument challenges Plaintiffs' ability to maintain a class action under either Rule 23(b)(1) or (b)(2).[2] The Court addresses each subsection in turn.

### A.  Rule 23(b)(2)

Rule 23(b)(2) permits "class actions for declaratory or injunctive relief when 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem Prods.,* 521 U.S. at 614; *see also* Fed.R.Civ.P. 23(b)(2). The rule clearly states that claims seeking injunctive or declaratory relief may be appropriate for Rule 23(b)(2) class certification.  In *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998), the Fifth Circuit discussed when certification under Rule 23(b)(2) is appropriate. The court explained that although Rule 23(b)(2) is silent as to whether monetary remedies may be sought in conjunction with injunctive or declaratory relief, the Advisory Committee Notes on Rule 23 state that class certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Id* . at 411. The court in *Allison* found that this commentary implies that the drafters of Rule 23 intended that at least some form or amount of monetary relief would be permissible in a Rule 23(b)(2) class action. *See id.* (citing *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 257 (5th Cir.1974)). The court

---

[2] Plaintiffs no longer assert that they can maintain a class action under Rule 23(b)(3).

determined that monetary relief may be obtained in a Rule 23(b)(2) class action as long as the predominant relief sought is injunctive or declaratory. *See id.* In order for monetary relief to be appropriate, it must be only incidental to requested injunctive or declaratory relief. *See id.* at 415. Incidental damages in such instances may flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. *See id;* Fed.R.Civ.P. 23(b)(2) (referring only to relief appropriate "with respect to the class as a whole"). "Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations." *Id.* The Fifth Circuit in *Allison* found that the district court was in the best position to assess whether a monetary remedy is sufficiently incidental to a claim for injunctive or declaratory relief to be appropriate in a Rule 23(b)(2) class action. *See id.* at 416.

In *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the Supreme Court set forth the purposes of a 23(b)(2) class:

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Nagareda, 84 N.Y.U.L.Rev., at 132. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Id.* at 2557. Those cases allowing certification of a defendant class under Rule 23(b)(2) typically involve actions to enjoin public officials from enforcing locally administered statutes or policies as well as requests for a declaration that a particular patent is invalid or that a state statute is unconstitutional because the resulting judicial directive has the effect of enjoining the enforcement of the patent or statute. *See Greenhouse v. Greco*, 617 F.2d 408, 413 (5th Cir.

1980); *see also* 7AA Wright, Miller & Kane, *Federal Practice and Procedure*, § 1775 at 58-60 (3d ed. 2005). The Court finds that the relief sought here is primarily monetary. Plaintiffs seek injunctive relief in the form of a class-wide public health notice and declaratory relief regarding general causation. The declaratory judgment sought does not provide relief to each member of the class. Even if the Court declared that there was a *Legionella* outbreak due to a breach of the legal duty owed by the Defendants, each plaintiff would still have to prove: (i) the level and duration of his exposure while at the hotel; (ii) the absence of exposure elsewhere; (iii) his particularized injuries; (iv) that the exposure (and not a pre-existing condition or susceptibility) caused those injuries; and (v) if so, to what extent before he/she would be entitled to any relief.

Plaintiffs admit that (i) their ultimate goal is the recovery of individual monetary damages and (ii) that the Fifth Circuit standard for determining whether 23(b)(2) certification is proper requires that the injunctive relief sought must predominate over the monetary relief sought. (R. Doc. 580 at 28). Plaintiffs', however, attempt to reconcile these conflicting positions by arguing that although individual plaintiffs will ultimately seek monetary relief, such relief is not being sought on a class-wide basis and thus is incidental to the declaratory judgment and injunctive relief sought. (R. Doc. 580 at 30). However, given that the declaratory judgment and injunctive relief sought will not provide relief to any member of the class—whose claims include "physical pain and suffering, mental anguish, emotional distress, disability, economic loss, and loss of life's pleasures" (R. Doc. 94)—Plaintiffs' claims can only be redressed through individual damage awards, which are not available in a Rule 23(b)(2) class. *See Dukes*, 131 S. Ct. at 2557 ("[23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."); *see also Allison*, 151 F. 3d at 415

("[I]ncidental damage should not require additional hearings to resolve the disparate merits of each individual's case.").

Furthermore, the Fifth Circuit expressed concern that "Plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections." *Bolin,* 231 F.3d at 976. A declaratory judgment in the Plaintiffs favor serves only to permit future adjudication of damages and the injunctive relief sought does not advance the Plaintiffs' cause of action. Consequently, 23(b)(2) certification is inappropriate under the circumstances. *See Langbecker v. Electronic Data Sys. Corp.,* 476 F.3d 299, 317 (5th Cir.2007) ("This Court has refused to permit certification of a class where many members have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages.") (internal citations and quotations omitted)).

**B.     Rule 23(b)(1)**

Rule 23(b)(1)(A) provides that an action may be maintained as a class action when the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. Fed.R.Civ.P. 23(b)(1)(A). Rule 23(b)(1)(A) directs the court to consider whether individual actions would expose the party opposing the class to a serious risk of being in a conflicted position. 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1773 (3d ed. 2008). Classic Rule 23(b)(1)(A) class actions are those arising from situations in which "different results in separate actions would impair the opposing party's ability to pursue a uniform course of conduct." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 318 (5th Cir. 2007) (quoting Wright & Miller, *Federal Practice and Procedure* § 1773). Examples of these situations include actions to declare bond issues invalid, actions to fix the rights and duties of a riparian owner vis-

10

à-vis a class of downriver property owners, actions to determine a landowner's rights and duties respecting a claimed nuisance, and actions to determine the proper way of calculating social security benefits.  *See Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1194-95 (9th Cir.) *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).  While certification under (b)(1)(A) may be preferable where injunctive or equitable relief is the principal goal of the litigation, it is seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs.  *See Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortgage Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010); *see also Langbecker*, 476 F.3d at 318.

First, Defendants argue that class certification under Rule 23(b)(1)(A) is inappropriate because there is no risk that Choice and CWI will have to comply with incompatible standards of conduct.  The injunctive relief sought is not the type of relief appropriate for (b)(1)(A) classes because different results in separate actions would not "impair the opposing party's ability to pursue a uniform course of conduct." *Langbecker*, 476 F.3d at 319.  Here, the Plaintiffs' claims relate to alleged past conduct with respect to maintenance of the hot tub.  The hot tub at issue here was removed in January of 2013.  Thus, there is no continuing course of conduct that must be stopped or otherwise enjoined.  Plaintiffs' argument that Defendants' failure to issue a public health notice creates an ongoing health risk belies commonsense.  The tub has been removed and the incubation period of Legionnaires' disease is usually between 2-14 days.  While the Court appreciates the argument that people might be sick or have been sick without knowledge of why, this fact does not create an ongoing health risk as it is irrelevant to any course of conduct that must be enjoined.  In fact, Defendants' argument that Plaintiffs are attempting to use Rule 23 as a vehicle to identify potential new plaintiffs and not to redress a public health risk is more plausible.

11

Similarly, there is no basis to conclude that adjudicating issues of liability and causation through individual actions would necessarily establish incompatible standards of conduct. A judgment of liability and causation as to one plaintiff and judgment in favor of the Defendants as to another plaintiff would not "necessarily" impair the Defendants' ability to pursue a uniform course of conduct. As stated above, Plaintiffs' ultimate goal is the recovery of monetary damages. A declaration as to general causation without further proceedings to establish specific causation and monetary damages is meaningless. Moreover, "certification under (b)(1)(A) is seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying damages to different plaintiffs." *Casa Orlando Apts.*, 624 F.3d at 197.

C. 23(c)(4)

Notwithstanding the foregoing, Plaintiffs argue that certification of particular issues is appropriate pursuant to Rule 23(c)(4) to promote efficiency of the litigation. Plaintiffs correctly assert that the Fifth Circuit has approved the use of (c)(4) issue certification under certain circumstances: "[e]ven wide disparity among class members as to the amount of damages does not preclude class certification and courts, therefore, have certified issues even in light of the need for individualized calculations of damages." *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) *cert. denied sub nom. BP Exploration & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754 (2014). However, Rule 23(c)(4) is not a stand-alone clause. It does not permit plaintiffs to ignore the requirements of 23(a) or (b). Plaintiffs cannot sever issues in an attempt to circumvent Rule 23(b) requirements. *See In re Vioxx Prod. Liab. Litig.*, 239 F.R.D. 450, 462 (E.D. La. 2006) (disallowing "creative use of bifurcation" to sever individual causation and damages issues because the "cause of action, as a whole, must satisfy the predominance requirement of (b)(3)"); *see also In re Katrina Canal Breaches Consol. Litig.*, No. CIV A 05-

4182, 2007 WL 2363135, at *1 (E.D. La. Aug. 16, 2007) ("Rule 23(c)(4) issue certification is allowed *only* if the Rule 23(b) requirements are first met as to the claim and the court has done a searching analysis of plaintiffs' cause of action as a whole…").

Given that the Plaintiffs cannot meet the requirements of Rule 23(b), issue certification under (c)(4) is inappropriate under the circumstances. Moreover, the issue certification proposed by Plaintiffs under (c)(4) does very little to materially advance the litigation as a whole and, as such, does not promote efficiency, which is the purpose of issue certification. Even if Plaintiffs prevail on the issue of duty and breach as to general causation, Plaintiffs will still have to prove the following: (i) specific causation, which will require epidemiological studies for each individual plaintiff to determine the level of exposure to any bacteria, the duration of exposure to the bacteria, proximity of a plaintiff to the exposure, the health or condition of each plaintiff that make him/her more susceptible to illness or disease, and alternate sources of exposure for each plaintiff; (ii) the particularized injuries for each individual plaintiff; and (iii) the amount of damages, if any, each plaintiff is entitled to recover. (R. Doc. 563-1 at 13).

Furthermore, assuming *arguendo* that certification of certain issues under (c)(4) is appropriate, those issues must be sufficiently separate from other issues so that a severed trial will not infringe on the constitutional right to a jury trial. The Seventh Amendment prohibits a second jury from re-examining facts and issues decided by a prior jury in the same case. U.S. Const., Amend. VII, Reexamination Clause. The Fifth Circuit "has cautioned that separation of issues is not the usual course that should be followed, and that the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice." *Castano*, 84 F.3d at 750. Because the issues of general and specific causation are interrelated, Plaintiffs' proposed bifurcated trial plan risks running afoul of Defendants' Seventh Amendment rights. Plaintiffs argue that their proposed trial plan would prevent repetitious re-litigation by

each putative class member. However, because of the nature of the claims alleged, extensive separate analysis as to the potential class members' exposure to the bacteria, the transmission of the bacteria, the plaintiffs' susceptibility to Legionnaires' disease and perhaps their contributory negligence is required. Thus, any judicial economy resulting from bifurcation is outweighed by the greater potential of a Seventh Amendment violation.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiffs have failed to satisfy their burden under Rule 23(b)(1) or (2). Therefore, the court need not address the threshold requirements of Rule 23(a). Defendants' motions to strike the class allegations (R. Docs. 562, 563, 566) are GRANTED.

New Orleans, Louisiana, this 27th day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE